# EXHIBIT B

Dockets.Justia.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOOGLE INC., *a Delaware Corporation*,

Plaintiff,

v.

RICHARD WOLFE, *an individual doing business as* Froogles.Com,

Defendant.

Docket No. 05-CV-01779-TCP-ETB

Central Islip, New York
April 6, 2006

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE E. THOMAS BOYLE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S :

For the Plaintiff: Virginia Ann R. Richard, Esq.
Lana Claire Marina, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166
(212) 294-4639
(212) 294-4700 *fax*
*Email:* vrichard@winston.com

For the Defendant: James Martin Gibson, Esq.
Law Office Of Robert L. Powley P.C.
417 Canal Street, Floor 4-H
New York New York 10013
(212) 226-5054
(212) 226-5085 *fax*

Court Transcriber: Typing At Your Doorstep
9 Sutherland Road
Hicksville, New York 11801
(516) 643-3483
*Email:* TAYDS@optonline.net

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

I N D E X

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| None | | | | |

E X H I B I T S

| COURT | DESCRIPTION | MARKED | RECEIVED |
|---|---|---|---|
| No Documents | | | |

THE COURT: Calling CV 05-1779 Google Inc. v. Wolfe; counsel, please state your appearance.

MR. GIBSON: Jim Gibson with the law firm of Robert L. Powley, P.C. for Defendant Richard Wolfe.

MS. RICHARD: Virginia Richard and Lana Marina from Winston & Strawn for Plaintiff Google Inc.

THE COURT: Good morning.

MS. RICHARD: Good morning, Your Honor.

MR. GIBSON: Good morning, Your Honor.

THE COURT: Who initiated this request today?

MR. GIBSON: I did, Your Honor, Jim Gibson.

THE COURT: Okay. Would you like to be heard?

MR. GIBSON: I'm sorry, I didn't hear that.

THE COURT: Would you like to be heard?

MR. GIBSON: Yes, I would, please.

THE COURT: Yes.

MR. GIBSON: Thank you first, Your Honor, for taking the time to hear us.

THE COURT: Sure.

MR. GIBSON: The purpose of my letter, Your Honor, is there's a discovery dispute between the parties with respect to Plaintiff producing it's witnesses under our 30(b)(1) notices and discovery deadline -- fact discovery deadline promptly approaching of May 15. And the purpose of my letter was to see if the parties could get on the phone with you to resolve the

dispute so that discovery could be completed -- fact discovery could be completed on time.

THE COURT: Sure.

MR. GIBSON: The basis of the dispute, Your Honor, we served on March 3 three 30(b)(1) notices on the Plaintiff, and you have a copy of the notices with our March 30 letter. But basically we sought to depose and still seek to depose Mr. Paige who is the President and Co-Founder of Google, Inc., as well as two individuals that are, I believe, both Vice Presidents in the product area for Google with respect to their own unique personal knowledge that they might have relating to facts relevant to this case.

On March 29, we got an email from opposing counsel indicating that they were not going to produce these individuals because they didn't have any knowledge about Froogle. And --

THE COURT: Well, with regard to two of them, Kalamgar (phonetic) -- excuse me if I'm mispronouncing names here -- and Rosenberg; they had disclosed to those individuals as having particular knowledge -- not only knowledge, but particular knowledge within the upper-level of management.

MR. GIBSON: I believe they did the same for Mr. Paige, Your Honor.

THE COURT: I don't believe they did, but maybe counsel can correct me because I thought I saw a distinction there. I didn't see Paige as one of the individuals, unless I

overlooked it in the 26(a)(1) disclosures.

MS. RICHARD: Your Honor, if I could just interject here?

THE COURT: Sure.

MS. RICHARD: With respect to Mr. Kalamgar, Mr. Rosenberg, and Mr. Paige, the representations with respect to all three were that they may have knowledge relating to the launch operations of Froogle Internet prevention. So, all have conditional disclosure. And we have advised --

THE COURT: Okay, I don't want to interrupt counsel. I'll give you every opportunity to respond.

Mr. Gibson, I stand corrected. I'm just looking for it because I went through this several times, and I still don't see it.

MR. GIBSON: I think it's on page 10, Your Honor, paragraph number 25.

THE COURT: Your right, your right, okay, thank you.

MS. RICHARD: And would you go to Page 9, Your Honor, with respect to Mr. Kalamgar and Mr. Rosenberg that disclosure is identical.

THE COURT: Right. I was focusing on which would be limited to a high level senior management perspective.

MS. RICHARD: Yes, and that's true of all three.

THE COURT: Good. Okay, Mr. Gibson, go ahead.

MR. GIBSON: Okay, so, I' guess my first point, Your

Honor, is that these folks have been identified in Plaintiff's initial disclosure as people with knowledge. So, I believe at some point in time, they themselves thought they had knowledge. But more importantly, Your Honor, the second point is, this case -- the Plaintiff brought this case alleging trademark infringement by our client Froogle. This case is not just about Froogle. And Plaintiff's attempt to limit these individuals' knowledge with respect to Froogle is improper. These three individuals -- Mr. Paige, being the Founder of Google, certainly had knowledge about their use; they admitted in their judicial disclosures having knowledge -- personal knowledge of Froogle, which is their case. Froogle, Your Honor, is our counterclaimant, and while they maintain that these individuals don't have unique personal knowledge, we're in possession of a document, Your Honor, that clearly indicates all three of these individuals sit on some type of, I'll call it committee for lack of a better word, that this document talks about the implementation and strategy of Froogles product. So, in our opinion, they have unique personal knowledge.

THE COURT: That may cut two ways because if that's a committee and there's someone perhaps as Mr. Kalamgar or Mr. Rosenberg who can provide the same information, then that's more of a reason to my way of thinking why you shouldn't do duplicitous discovery.

MR. GIBSON: Well, Your Honor --

THE COURT: If there's something unique about Mr. Paige, then that's something that you would want to highlight for him.

MR. GIBSON: Well, it's difficult to tell, Your Honor, from the document. Fortunately, to the best of our ability we have seen one -- this is an email that talks about minutes of a meeting held on February 27, 2002, which is approximately a couple of weeks before Froogles launch.

THE COURT: Okay.

MR. GIBSON: And the hint from the email we have, it's pretty clear to us that the people at the meeting are deferring to Mr. Paige --

THE COURT: Right.

MR. GIBSON: -- for decision-making purposes. Whether there are more minutes of meetings like these, I'm not sure, at least that have been produced.

THE COURT: Right. Have you demanded those minutes?

MR. GIBSON: Yes, we have.

THE COURT: Have they been forthcoming?

MR. GIBSON: Well, we only got -- Your Honor, we got this email in the initial request for documents, but only this emails. In our second request for documents, we specifically requested in other missed emails that were otherwise at length discussed. Minutes of what appears to us to be marketing development launch committee meetings for Froogle.

THE COURT: Can I hear from the other side now?

MS. RICHARD: Yes, Your Honor, we agree with Your Honor's assessment that the 30(b)(1) notices are duplicitous and in addition to that, we have offered that 30(b)(6) witnesses, three witnesses who have instant knowledge of the origin of the Froogle launch, the origin of the Froogle website, development of the website, the implementation of the website, and the marketing and sales of the website, including the trademark counsel who was involved every step of the way in the development of this particular product. And our position really is it's probably in everyone's best interest and the immediate interest of economy to proceed with the 30(b)(6) depositions, learn what the facts are with respect to Froogle and these individuals who also have knowledge with respect to Google, and then if it's absolutely necessary to go to higher management, that would be the time to do that.

The depositions of 30(b)(6) witnesses have been scheduled for next week. Mr. Neville Manning (phonetic) who is the senior scientist and a person who has intimate knowledge of the workings of that service is scheduled for Wednesday. And Rose Hayden (phonetic), who is in-house trademark counsel who is involved in the collection of the mark and review of all the materials relating to this domain name and also familiar with this litigation as it has evolved from the opposition pertaining to its present state, is scheduled for next Friday. And Ms.

Jaffe (phonetic), who was scheduled for next Friday unfortunately is unable to make that date because counsel for the Defendant failed to adjourn the date with her, but she will be available later in the month of April.

And I would note, Your Honor, although the parties did a scheduling order which I'm told that it closes the discovery April 15, the Court actually entered an order which indicates that the close of discovery is October 1. So, this urgency which counsel for the Defendant is relying on in order to further the 30(b)(1) notice really does not exist.

THE COURT: Okay, I'll give you freedom to modify that order within the overall envelope that you have, which it looks like -- what is it -- October 30 was the deadline for all discovery? So, it looks like you left about five months for experts, is what you did?

MR. GIBSON: Yes, that's our understanding.

THE COURT: So, I mean if you want to, you know, submit something and you'd like it in order form, I'd be glad to extend it out. At this point, I'd like it to stay within the envelope. I think I had told you -- and the envelope being the end of October -- I think I told you at the outset that the overall flexibility you have -- if you go back and you look at the first order that you received from me in this case that set up your initial conference, it says on page 2, number 4 that you could go out up to 120 days for good cause shown and then it

refers to the standard changing after that to avoidance of the manifested justice. So, you know, as long as you're working on the case, and you certainly are, you could go out -- you have that flexibility of the 120 days. It's rare that an extension is ever granted after that 120 days, but I'm just pointing out to you the overall flexibility you have with regard to the plan that's in place now. So, if you want to agree on extending that fact discovery, you know, until the end of May or whenever, whatever you want to do at this point, within the existing envelope that you have, I'd be glad to sign off on it. So, you have that flexibility.

Now, I want to ask you a question because if we can't resolve -- what we're trying to do today is resolve this on a consensual basis. I got a request for a conference and that's always good and we can discuss the issues. But if not, you'll find that there is a procedure, you can check it in your local civil rules. Basically what it comes down to is providing an affidavit that someone has no personal knowledge here, and then one side could ask for an order of protection or the other side can move to compel and you know, and it's resolved that way. And you can do it all in letter form as far as I'm concerned.

The point I want to make, however, is what makes this case a little bit different is that the Plaintiff in the 26(a)(1) disclosure, that's the automatic discovery, has indicated that all these high level people have unique knowledge

that -- have personal knowledge with regard to the case. You usually don't get that when this issue arises. What I would like to suggest to you is -- I assume Mr. Gibson you want to do these depositions that are set up next week?

MR. GIBSON: Yes, Your Honor. You're referring to depositions of the Google witnesses?

THE COURT: Yes.

MR. GIBSON: Yes.

THE COURT: What my suggestion would be is add one of these high-level individuals, not Mr. Paige, either or Rosenberg or Kalamgar to what you agree on and see where you stand then. As Plaintiff's counsel has suggested, very often the best way to make a case to do an upper level person is to move up the chain and I don't want to make you do unnecessary depositions with regard to lower level people. But if you feel that there's value in what they've offered on their 30(b)(6)'s then do that, supplement it -- my suggestion would be to supplement it with either Kalamgar or Rosenberg and then see where you are.

MR. GIBSON: Okay.

THE COURT: I mean if, as you suspect, Rosenberg or Kalamgar you know provides information that leads you to the Plaintiff and you feel that that deposition is essential then you can do your motion to compel or whatever and you know anything you do before that isn't going to prejudice you. If anything, it's going to put you in a better position to know.

Maybe after you do one mid-level person, you'll realize that as far as the issues involved in this litigation, it's not necessary to go any further. You're familiar with the case law with regard to you know CEO's and you know this would certainly be someone who shouldn't be unnecessarily deposed.

MR. GIBSON: Yes.

THE COURT: I don't know; how does the Plaintiff feel about one of -- you know, either Mr. Rosenberg or Mr. Kalamgar, whoever has more knowledge?

MR. RICHARD: Your Honor, I think that that's a very fair and reasonable approach, and we will certainly endeavor to get availability dates for both of those individuals, and whichever one is suitable, we'll go forward with the deposition within the timeframe. Or if we have to wait because Your Honor suggested extending the timeframe for depositions, then we'll do that.

THE COURT: Okay. Now, I want to bring up one issue because I noticed that there's an issue with regard to where these depositions occur. And it seems to me Google has pulled Wolfe and Froogle in and I don't know why these depositions should not take place within the forum state. That would be the general rule. Now, there may be extenuating circumstances that warrant doing these folks in California, but it wasn't evident from the paper so I just wanted to raise that and get your input on that.

MR. GIBSON: Your Honor, I could speak for Defendant. Obviously, we would prefer to do them here.

THE COURT: Yes.

MR. GIBSON: What Your Honor has not been privy to is there were a number of discussions back and forth with counsel with regard to Mr. Wolfe's deposition; where that deposition would occur. Of course, Mr. Wolfe is here in New York too. And between counsel, we sort of agreed, at least with regard to Mr. Wolfe, that we would have depositions at the offices of Plaintiff's counsel; they videoed the deposition.

THE COURT: Right.

MR. GIBSON: So, that was my thoughts.

THE COURT: And that was in New York?

MR. GIBSON: That was in New York, yes. At the time I spoke with counsel, what we were trying to work out was where we would do their witnesses and of course Plaintiff's counsel didn't offer New York, so we tentatively agreed -- I believe, this is correct, but Virginia you could correct me if I'm wrong -- that if and when we got people and dates for Google witnesses they would provide facilities at their offices should they be done in California.

THE COURT: I mean if California works; I'm not looking to make issues. For instance, if Wolfe and Froogle had brought -- had sued Google, then under the general rule, you would have to do it at party headquarters unless you agreed

otherwise, and that would be out in California. The shoe is on the other foot so, you know, the general rule would seem to be that it occurs in New York.

MR. GIBSON: We're in favor of the general rule, Your Honor.

THE COURT: I don't want to upset the applecart.

MR. GIBSON: Well, one of the other things --

THE COURT: It seems to me that was an issue that someone -- I think you had raised it in your papers.

MS. RICHARD: Actually, that issue was not raised, Your Honor. At first we had not tentatively agreed but had agreed that the Google deposition would take place in California for the convenience of all involved, which would mean one flight out of California for Mr. Gibson or whoever Plaintiff or Defendants called on versus flying all these people into New York.

THE COURT: If that works, you can all agree however you want.

MR. GIBSON: Can I just -- that's not my agreement, Virginia. My understanding was you were not going to produce any witnesses unless we went to California. That was my understanding. And if we're going to work out a discovery schedule, a deposition schedule, you know you have two 30(b)(6) people noticed for next week; one in New York, one in California. We've agreed to one in New York, Mr. Neville

Manning is in New York, correct?

MS. RICHARD: That is correct.

MR. GIBSON: And you've offered to produce Rose in California.

MS. RICHARD: That is also correct.

MR. GIBSON: Okay. That's where we stand right now. I don't know about -- you know if we can agree to depose one of these middle posts and not Mr. Paige to see where that leads us, we need to agree on where that deposition could take place also.

I'm not opposed, Your Honor, to taking the deposition -- 30(b)(6) deposition in New York. I'm not opposed to taking a first mid-level person plaintiff. Quite frankly -- well, I'm not too sure I know which one it would be, but in any event, I'm not opposed to meeting them halfway and taking one senior if there's any need to take anyone else --

THE COURT: Okay.

MR. GIBSON: -- provided we can agree on, I guess, some type of extension required for fact discovery.

THE COURT: Any other issues anyone would like to discuss?

MR. GIBSON: I think that's it, Your Honor.

THE COURT: Okay, if you want to fine tune that and submit it to get it so-ordered, I'd be glad to. If you just want to stipulate to it, that's fine too.

MR. GIBSON: Well, I would like to stipulate to it,

but I think we're going to have a little discussion as to where depositions are going to be, so I'm not sure we're going to be able to work this out, to be honest, Your Honor.

THE COURT: Okay. See what you can do.

MR. GIBSON: Okay.

THE COURT: Okay. Thank you very much, bye, bye.

MR. GIBSON: Thank you, Your Honor.

(Whereupon, the proceeding concluded at this time.)

* * * * *

CERTIFICATION

I, Rochelle Grant, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated: April 12, 2006

______________________________
Signature of Approved Transcriber

Rochelle V. Grant
______________________________
Typed or Printed Name