Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013
Telephone: (212) 226-5054
Attorneys for Defendant
RICHARD WOLFE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------)
GOOGLE INC.,                                         :
a Delaware corporation,                              :    CV-05-1779 (TCP) (ETB)
                                                     :
    Plaintiff/Counter-Defendant,                     :
                                                     :
    v.                                               :
                                                     :    Reply
RICHARD WOLFE d/b/a                                  :
FROOGLES.COM,                                        :
an individual,                                       :
                                                     :
    Defendant/Counterclaimant.                       :
-----------------------------------------------------)

**DEFENDANT/COUNTERCLAIMANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO COMPEL DISCOVERY AND FOR ATTORNEYS' FEES**

I.   **MR. ROSENBERG SHOULD BE ORDERED TO APPEAR
     FOR DEPOSITION IN NEW YORK**

As noted in Mr. Wolfe's Motion to Compel, the deposition of Mr. Rosenberg has been noticed three times with the first notice being served back on March 3, 2006 and the most recent notice being served on September 14, 2006. Google took no action to prevent Mr. Rosenberg from being deposed. In fact, Google completely ignored Mr. Wolfe's most recent notice for almost two weeks, failed to move for a protective order pursuant to Fed. R. Civ. P. 26 (c), and failed to have Mr. Rosenberg execute a declaration

pursuant to Local Civil Rule 30.5 stating, under oath, that he has no knowledge of the issues in this lawsuit, including the marks GOOGLE and FROOGLE.

Interestingly, Google does not dispute that Mr. Rosenberg has knowledge of the issues in dispute in this lawsuit, rather Google's position is that his knowledge will be "limited to a high-level senior management perspective." In light of the limited testimony given by Google's primary 30(b)(6) witness, Mr. Nevill-Manning (who counsel for Google represented would "answer all your questions"), Mr. Wolfe accepts that Mr. Rosenberg's knowledge may be limited as portrayed, but maintains the position that his knowledge may be beneficial to Mr. Wolfe's case and defenses in this matter and his testimony may well be more informative than testimony provided by Mr. Nevill-Manning (as discussed further below).

However, if Mr. Rosenberg is willing to execute an affidavit pursuant to Local Civil Rule 30.5 stating for the record that he has no knowledge of the facts at issue in this lawsuit, including Mr. Wolfe's counterclaim, Mr. Wolfe is prepared to withdraw Mr. Rosenberg's notice. In the absence of an affidavit from Mr. Rosenberg, it seems clear that he has knowledge relevant to this lawsuit and Google is refusing to produce him for deposition simply because it is attempting to control who Mr. Wolfe can depose. Google's actions (and inactions) should not be condoned by the Court and Mr. Rosenberg should be ordered to appear for deposition at Mr. Wolfe's counsel's offices in New York.

## II. GOOGLE'S PRIMARY 30(b)(6) WITNESS LACKED KNOWLEDGE TO PROPERLY TESTIFY ON MANY SUBJECTS

The deposition of Mr. Rosenberg is further necessitated by the lack of knowledge of one of Google's two 30(b)(6) witnesses. To date, Google has produced two witnesses in response to Mr. Wolfe's 30(b)(6) Notice of Deposition. The first witness Google produced was Rose Hagan, Esq., in-house counsel at Google. Ms. Hagan testified as to various topics included in the 30(b)(6) notice, but she is a lawyer and was not designated to testify on topics such as consumer complaints, characteristics of the purchases on www.froogle.com, consumer use on the website www.froogle.com, consumer inquiries as to a relationship between Google and Mr. Wolfe, or advertising. The second 30(b)(6) witness to testify on Googles' behalf was Mr. Nevill-Manning, a software engineer at Google. Mr. Nevill-Manning was designated to testify to numerous topics in Mr. Wolfe's 30(b)(6) notice, including but not limited to channels of trade, locations of electronic documents sent by Google relating to the websites www.froogle.com and www.froogles.com, selection of the mark FROOGLE, and the current use of the mark FROOGLE.

While Google asserts that Mr. Nevill-Manning's deposition testimony was sufficient because "Mr. Nevill-Manning prepared for his deposition by educating himself on any material areas where he did not have personal knowledge" (Plaintiff's Opposition Pg. 6 Footnote 4, citing Al-Salam Decl. ¶ 11), the following excerpts from his deposition testimony clearly demonstrate that his knowledge was, at best, lacking under the purview of Fed. R. Civ. P. 30(b)(6). Specifically, Mr. Nevill-Manning has extremely limited knowledge on the topics of sales/marketing; document retention; creation, selection, clearance or adoption of trademarks; general knowledge of the lawsuit; advertising;

3

marketing; familiarity with FROOGLES and www.froogles.com; consumer complaints; market surveys/research; and Google's allegations in its complaint.

In response to paragraphs 13, 14, and 16 of the 30(b)(6) Notice dealing with sales and marketing of Google's products, Mr. Nevill-Manning testified as follows[1]:

> Q. During any of your employment time at Google, did you have any responsibility relating to the sales or marketing of any Google products?
>
> A. No, I didn't.

In response to paragraph 1 of the 30(b)(6) Notice dealing with Google's document retention policies, Mr. Nevill-Manning testified as follows:

> Q. So the only person at Google in the entire company that you can testify as to what their habits or policies or practices are, are your own?
>
> A. Yes.

In response to paragraphs 5, 7, 8, and 9 of the 30(b)(6) Notice dealing with creation, selection, clearance or adoption of trademarks, Mr. Nevill-Manning testified as follows:

> Q. Mr. Nevill-Manning, are you involved in any way at Google with respect to the creation, selection, clearance or adoption of trademarks?
>
> A. No, not on a -- not on a tech – not in a technical sense. I proposed the name Froogle, but as far as any trademark issues, that's not my domain.
>
> Q. Let me ask a different question then. If you saw someone out on the street today using the mark Googles with an "S," would you raise that to somebody at your company?
>
> A. It's difficult to say. I -- I may or may not. It's really not my job to deal with trademark issues, so...

In response to paragraph 47 of the 30(b)(6) Notice, dealing with Google's allegations in the Complaint, Mr. Nevill-Manning testified as follows:

---

[1] Because an official copy of the transcript for Mr. Nevill-Manning's deposition is not yet available, these excerpts are taken from an unofficial copy of the transcript. Nonetheless, it should be clear to the Court that Mr. Nevill-Manning's testimony is severely lacking in several key areas.

4

>   Q. Do you know if you're the plaintiff or -- did Google bring this lawsuit or did Mr. Wolfe bring the lawsuit?
>
>   A. I believe that we did not bring the lawsuit.

In response to paragraphs 15, 16, 17, and 18 of the 30(b)(6) Notice, dealing with advertising, Mr. Nevill-Manning testified as follows:

>   Q. Do you know if there is a formal written advertising budget for the Froogle mark?
>
>   A. Not to my knowledge.
>
>   Q. If there was one, would you be the person responsible for it?
>
>   A. No.

In response to paragraphs 15, 16, 17, 18, and 19 of the 30(b)(6) Notice dealing with marketing, Mr. Nevill-Manning testified as follows:

>   Q. Who is the head of the marketing department?
>
>   A. You know what, I don't know their name. It's -- marketing is not something I deal with on a regular basis and it's not a function that's particularly important at Google.
>
>   Q. So I don't want to -- you don't know if there's a formal written advertising budget for Froogle, correct?
>
>   A. That's correct.
>
>   Q. Do you know if there's any reports that confirmed any expenditures or advertising on promoting the Froogle name?
>
>   A. Not that I'm aware of.

In response to paragraphs 4 and 25 of the 30(b)(6) Notice dealing with Mr. Wolfe's use of FROOGLES and Froogles.com, Mr. Nevill-Manning testified as follows:

>   Q. Mr. Nevill-Manning, are you familiar with Mr. Wolfe's product Froogles?
>
>   A. Not particularly. I visited it once, but I've not spent more than 30 seconds with the product.

5

>   Q. You looked at the front page and then you signed off?
>
>   A. That's correct.
>
>   Q. But so I'm clear, I just want to make sure, because I don't want to torture us with a whole line of questions maybe we don't have to go through. You are not familiar with the defendant's Website and how it operates?
>
>   A. That's right.
>
>   Q. Would you consider the defendant to be a competitor of Google's with respect to the Froogle product?
>
>   A. I think my answer is the same. I don't know enough about his product to really make a complete judgment.

In response to paragraphs 26 and 32 of the 30(b)(6) Notice dealing with consumer complaints Mr. Nevill-Manning testified as follows:

>   Q. Mr. Nevill-Manning, do you have any responsibility at Google for consumer complaints?
>
>   A. No, I do not.

In response to paragraph 35 of the 30(b)(6) Notice dealing with surveys or market research, Mr. Nevill-Manning testified as follows:

**Market Surveys / Research (Pg. 72, Lines 23-25 – Pg. 73, Lines 2-4):**

>   Q. Mr. Nevill-Manning, do you have any knowledge about any market surveys or market research that Google has done with respect to the Froogle mark?
>
>   A. No, I'm not aware of any surveys that have been done.

Clearly, the forgoing excerpts reveal Mr. Nevill-Manning's overall lack of knowledge with regard to the subject lawsuit and cannot be construed as satisfactorily conveying Google's knowledge as to the topics identified in Mr. Wolfe's Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) and/or the areas referenced above. Mr.

Wolfe should be entitled to determine if Mr. Rosenberg can shed some light on these topics.

### III. Google's Obligation to Provide Sufficient Responses to Mr. Wolfe's Discovery Requests Remains Outstanding

Regardless of Google's motion to dismiss its claim the scope and subject matter of Document Request Nos. 1, 2, 3, 4, 5, 7, 9, 10, 11, and 12 and Interrogatories Nos. 1, 2, 3, 6, 7, 8, 9, 10 and 11 are live issues and remain relevant not only to Google's case-in-chief, but also to Mr. Wolfe's counterclaims. Google's obligation to provide complete and accurate responses to these discovery requests Pursuant to the Federal Rules of Civil Procedure remains.

For example, Document Request No. 1 refers to Google's "agreements with third parties relating to use of the marks GOOGLE, FROOGLE and/or any mark containing the term 'OOGLE'"; Document Request No. 7 refers to "documents referring or relating to the distribution of 'product-team@google.com'". Both of these requests remain relevant to this lawsuit regardless of whether Google's case-in-chief is dismissed and Mr. Wolfe is entitled to discovery on all unanswered document requests. See, Notice to Compel, Exhibit I. Again, proper responses to all outstanding discovery requests will assist Mr. Wolfe in his case and he is entitled to proper responses.

### IV. GOOGLE SHOULD BE ORDERED TO PAY MR. WOLFE'S ATTORNEYS' FEES AND COSTS

Google spent nearly two months suggesting that is was considering withdrawing its case-in-chief. However, "considering a withdrawal" is not a sufficient basis to avoid

legitimate discovery requests. Rather, Google waited to the end of scheduled discovery, which has subsequently been extended, to finally file a motion to dismiss its case-in-chief. Further, this declaration was filed well after the due dates for responding to Mr. Wolfe's discovery requests and his properly noticed depositions. Had Google not delayed for months in serving a motion to dismiss, the necessity of a few of the issues raised in the Mr. Wolfe's motion to compel may have been avoided. To date, Google's delay in filing its motion to dismiss its case-in-chief is still not explained. Additionally, Defendant further submits that Google's actions are simply tactics manufactured to avoid legitimate discovery pertinent to a lawsuit it initiated. As such, Defendant respectfully requests that the Court order Google to pay Defendant's attorneys' fees and costs associated with this motion.

## V.   CONCLUSION

For the foregoing reasons, Mr. Wolfe respectfully requests that the Court order Google to produce Mr. Rosenberg for deposition in New York as soon as possible, fully respond to Mr. Wolfe's discovery requests, and pay Mr. Wolfe's attorneys' fees and costs associated with this motion.

Dated: October 5, 2006

Respectfully submitted,

By: *James M. Gibson*
Robert L. Powley, Esq. (RP 7674)
James M. Gibson (JG 9234)
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-50585

Attorneys for Defendant,
RICHARD WOLFE

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of October true and correct copies of the foregoing Defendant/Counterclaimant's Reply in Further Support of its Motion to Compel Discovery and For Attorneys' Fees were duly served on counsel for Plaintiff by email and U.S. first class pre-paid mail in envelopes addressed as follows:

Ramsey Al-Salam, Esq. (RAlsalam@perkinscoie.com)
Perkins Coie, LLP
1201 Third Ave Ste. 4800
Seattle, WA 98101
Telephone: (206) 359-6385
Facsimile: (206) 359-7385

Richard S Mandaro. Esq. (rmandaro@arelaw.com)
Amster, Rothstein & Bernstein
90 Park Avenue
New York, NY 10016
Telephone: 212-336-8106
Facsimile: 212-336-8001

Attorneys for Plaintiff,
GOOGLE INC.

_____
Casimir W. Cook

Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-8085
Attorneys for Defendant,
RICHARD WOLFE