Jayni Edelstein Alegria (JE 2408)
CAMERON & HORNBOSTEL LLP
866 United Nations Plaza
New York, N.Y. 10017
(646) 840-6666

Stephen L. Humphrey
CAMERON & HORNBOSTEL LLP
818 Connecticut Ave., N.W.
Washington, DC 20006
(202) 293-4690

Attorneys for Cameron & Hornbostel LLP,
former Counsel to Defendant/Counterclaimant,
Richard Wolfe

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
GOOGLE, INC.,
A Delaware corporation,

    Plaintiff/Counter-Defendant,

v.

RICHARD WOLFE d/b/a
FROOGLES.COM,
An individual,

    Defendant/Counterclaimant.
---------------------------------------------------------------x

CV-05-1779(TCP) (ETB)

**REPLY OF CAMERON & HORNBOSTEL LLP TO**
**MR. WOLFE'S OPPOSITION TO MOTION TO FIX A CHARGING LEAN**

Cameron & Hornbostel LLP ("C&H") hereby submits its reply to Mr. Wolfe's opposition to its motion to fix a charging lien pursuant to N.Y. Judiciary Law § 475. For reasons stated below and in the Second Declaration of Stephen L. Humphrey submitted herewith, C&H's motion should be granted.

## ARGUMENT

Mr. Wolfe apparently concedes, as he must, that the New York attorney's lien statute is applicable. He does not claim otherwise, nor does he object to this Court determining on a *quantum meruit* basis the amount due C&H for its 600+ hours of work performed on his behalf from and after July 1, 2004. Mr. Wolfe's argument in opposition is addressed below.

### A.  MR. WOLFE UNDERSTOOD THE TERMS AND LIMITATIONS OF THE CONTINGENCY AGREEMENT

Mr. Wolfe contends he did not realize that C&H's representation on a contingency fee basis was limited to the Opposition proceeding then pending before the TTAB and did not extend to any other proceedings that might be instituted by Google in the future. Defendant/Counterclaimants Opposition to Cameron & Hornbostel's Motion to Fix a Charging Lien, at 2 ("Wolfe Opposition at _") This is incorrect. Prior to identifying new counsel to represent him in the instant civil action, and while speaking highly of the representation provided by C&H, Mr. Wolfe acknowledged that he knew "all along" that C&H's willingness to represent him before the TTAB on a contingency basis did not extend to litigation in federal court. Thus, in an e-mail sent to C&H on June 20, 2005, when the contingency fee Agreement was in effect, Mr. Wolfe states in pertinent part as follows:

> [Y]ou have told me all along that your firm couldn't continue on a contingency basis in a federal lawsuit. . . .

E-mail from Richard Wolfe to Stephen L. Humphrey, Cameron & Hornbostel, June 20, 2005. Second Declaration of Stephen L. Humphrey Exh. A.

In that e-mail, Mr. Wolfe refers to the undersigned as his "hero attorney" and adds that "[f]or your firm to take this on with a contingency fee was a blessing" and "I know that you have done everything that you could and I thank you from the bottom of my heart":

> You were my hero attorney. All the filings you made with the uspto [United States Patent and Trademark Office] and especially with the

2

arbitration case were exceptionally well thought out and eloquently written. I really didn't have a doubt that if we went to trial that you could win the case. You were always optimistic. When we won the arbitration I felt that you could certainly win anything else that came flying from Google. . . .

You have believed in this case and done so much, so well that you gave me hope that we could overcome all obstacles that Google could throw at us.

For your firm to take this on with a contingency fee was a blessing. I know that you have done everything that you could and I thank you from the bottom of my heart. We have been a team going through this and you have become more than a lawyer but also you felt like a partner and friend.

The text of the contingency fee Agreement is consistent with Mr. Wolfe's own statement that he knew C&H's willingness to represent him on a strictly contingent fee basis was limited to the Opposition proceeding then pending before the TTAB. The Agreement itself is plainly worded and, as Mr. Wolfe's subsequent e-mail discussed above confirms, requires no additional explanation to understand it.[1] Paragraph 1, captioned "Scope of Legal Services," unequivocally states that C&H's representation is limited to matters before the USPTO and does not extend to any claims that might be asserted later by Google in a court of law:

> The parties agree that the legal services to be provided by [C&H] to [Mr. Wolfe] pursuant to this Agreement <u>shall be limited to representation of [Mr. Wolfe] in the USPTO Matters and possible related settlement negotiations</u>. [Emphasis supplied.] Legal services that are <u>not</u> to be provided by [C&H] under this Agreement specifically include . . . representation of [Mr. Wolfe] in connection with any claim . . . commenced by . . . Google . . . in a court of law . . . .

(Agreement at 2; emphasis of "<u>not</u>" is the original)

It is also pertinent to note that, prior to signing the Agreement, Mr. Wolfe approached other attorneys about representing him on a contingency basis but they had all declined to do

---

[1] A copy of the Legal Services Agreement ("Agreement") is attached to the first Declaration of Stephen L. Humphrey submitted in support of C&H's Motion to Fix a Charging Lien at Exh. 3.

3

so. (Second Humphrey Decl. at ¶3.) The Agreement makes reference to this fact in a "whereas" clause explaining the background leading up to the new fee Agreement:

> [Mr. Wolfe] has sought out other attorneys to represent him on a contingency basis but those attorneys have declined to take the matter on that basis as well; [C&H] is prepared now to agree to handle the USPTO Matters on a limited contingent fee basis subject to the terms and conditions set forth below.

(Agreement at 2; emphasis supplied.)

In light of the foregoing, it is clear that Mr. Wolfe was fully aware of and understood the limitations of the contingency fee Agreement, including in particular the exclusion of future lawsuits as might be filed by Google.

With regard to Mr. Wolfe's contention that he should have been referred to independent counsel before entering into a contingency fee agreement (Wolfe Opposition at 1), there is no such fixed requirement in the law. As the United States District Court for the Southern District of New York recently stated:

> Even if [the client] . . . [is inexperienced in legal matters] . . . this does not state a basis for rescission of a retainer agreement, and no authority has been set forth for such a proposition. Additionally, there is no obligation for an attorney to ensure that a potential client has an 'independent advisor' upon the signing of a retainer agreement.

King v. Fox 2004 U.S. Dist. LEXIS 462, *17 (S.D.N.Y. 2004) (emphasis supplied).

   B.   **THE FEE AGREEMENT IS FAIR AND REASONABLE**

In June 2004, Mr. Wolfe inquired in writing about C&H representing him on a contingency fee basis. (Second Humphrey Decl. at ¶ 4.) At that point the parties were conducting discovery in the Trademark Trial and Appeal Board ("TTAB") proceeding and preparing briefs and filing evidence in the proceeding instituted by Google against Mr. Wolfe under the Uniform Domain Name Dispute Resolution Policy ("UDRP"). In an e-mail dated June 4, 2004, Mr. Humphrey responded to a request from Mr. Wolfe that he "describe

4

possible best and worst case scenarios and associated costs." *Id*. In requesting the analysis, Mr. Wolfe asked whether C&H, which had been representing him on an hourly fee basis, would be willing to represent him "on a strictly contingency fee basis." *Id*. Following a lengthy analysis of possible scenarios and projected costs, Mr. Humphrey addressed the contingent fee question as follows:

> You inquired about the possibility of a contingent fee arrangement. As I mentioned [C&H] could not handle the matter on a strictly contingent fee basis. It might be possible, however, to reduce our regular hourly rates . . . in exchange for a fixed percentage of any settlement or award. . . .

E-mail from Stephen L. Humphrey to Richard Wolfe, June 4, 2004 (Humphrey Decl. at Exh. B).

On July 21, 2004, with costs mounting, Mr. Wolfe again inquired whether C&H would represent him "on a strictly contingent basis," (Second Humphrey Decl. at ¶ 5.) stating as follows in an e-mail to Mr. Humphrey:

> [T]his case is very important to me, this will make me or break me. <u>Can you take this case on a strictly contingent basis[?]</u> . . .
>
> I have believed in you, and you have believed in me and the case. . . I am willing to listen to all offers and am willing to make arrangements with you for a larger stake if you can continue to fight this on a completely contingency basis. I would rather have something than nothing.
>
> My back is up against the wall financially. <u>The only hope that I have got at this point is to partner with you and fight together</u>.

E-mail from Richard Wolfe to Stephen L. Humphrey, July 21, 2004 (Second Humphrey Decl. at Exh. C) (emphasis supplied).

In an e-mail one week later, Mr. Humphrey reported on various developments and possible next steps, stating as follows concerning the fee issue:

> These steps may require some type of partial contingent fee arrangement as we have discussed due to the likely costs involved. If you have any new thoughts on that or the possible alternative fee arrangements we have discussed please let me know.

5

E-mail from Stephen L. Humphrey to Richard Wolfe, July 27, 2004 (Humphrey Decl. at Exh. D).

The record is clear that C&H was reluctant even to represent Mr. Wolfe in the TTAB proceeding on a strictly contingency basis, let alone extending such an arrangement to possible future lawsuits that Google might file. At the same time it was becoming increasingly clear that Mr. Wolfe probably could not continue to pay C&H on an hourly-rate basis for its services, even under a modified contingency whereby C&H would reduce its rates in exchange for a percentage interest in any award or settlement.

C&H eventually agreed to represent Mr. Wolfe in the Opposition proceeding before the TTAB on a strictly contingent fee basis but with the clear understanding that the agreement was limited to that proceeding and that C&H would not be obligated to represent Mr. Wolfe on a contingency basis should Google or others file a lawsuit against him at some point in the future. (Second Humphrey Decl. at ¶ 6.)

Considering that (i) Mr. Wolfe approached other attorneys about representing him on a strictly contingency fee basis, but without success, prior to entering into a limited contingency agreement with C&H and (ii) it was quite clear by late July 2004 that Mr. Wolfe would not be able to continue the original hourly-rate fee agreement entered into with C&H[2], certainly it was fair and reasonable for C&H not to commit itself to handling unknown future lawsuits on a strictly contingency fee basis while at the same time agreeing to continue its representation of Mr. Wolfe before the TTAB. Thus, the fee agreement entered into was fair and reasonable, and fully understood by Mr. Wolfe.

---

[2] Mr. Wolfe did not pay for any services rendered or costs incurred by C&H on or after July 1, 2004. (Second Humphrey Decl. at ¶ 4.) Although Mr. Wolfe made payments to C&H after that date, those payments were for services and costs incurred prior to July 1, 2004. *Id.*

### C. MR. WOLFE UNDERSTOOD THE PURPOSE OF MOVING FOR SUMMARY JUDGMENT BEFORE THE TTAB

The argument that C&H failed to inform Mr. Wolfe that "the filing of a summary judgment motion could in fact conclude the TTAB proceeding" (Wolfe Opposition at 3.) is premised upon an erroneous understanding of when C&H began to work on a contingency basis and further erroneously presupposes that it may in a TTAB proceeding the parties suspend work once the motion is filed. (Second Humphrey Decl. at ¶7.)

C&H completed discovery on Mr. Wolfe's behalf in the TTAB proceeding in November 2004, so it was only logical to move for summary judgment as soon thereafter as practicable. C&H did so in December 2004.

By December 31, 2004, prior to Mr. Wolfe signing and returning the fee Agreement, C&H had essentially been working on a contingency basis for six months, since July 1, 2004. (*Id.*) The communications from Mr. Wolfe to Mr. Humphrey establish clearly that by July 2004 Mr. Wolfe was in no position to pay for legal services on an hourly-rate basis. As noted above, he stated in an e-mail dated July 21, 2004: "Can you take this case on a strictly contingent basis . . . My back is up against the wall financially. The only hope that I have got at this point is to partner with you and fight together." E-mail from Richard Wolfe to Stephen L. Humphrey, July 21, 2004 (Second Humphrey Decl., Exh. C). Thus, Mr. Wolfe was not in a position to pay for professional services in the TTAB and UDRP proceedings dating from July 1, 2004 unless the case settled , and no one knew when or if that would occur.

Calculated on an hourly rate basis, the value of the time recorded by C&H for services provided during the period July 1, 2004 through December 31, 2004 exceeds $150,000. (Second Humphrey Decl. at ¶ 8.) C&H did not send Mr. Wolfe any invoices for services provided or expenses incurred on or after July 1, 2004. (Second Humphrey Decl. at ¶ 7.) Nevertheless it continued to work diligently throughout what amounted to the busiest

combined period in the TTAB and UDRP proceedings. It is inappropriate and there is no basis for Mr. Wolfe's present counsel to intimate that there was something nefarious in the timing of the summary judgment motion and the contingency fee Agreement with Mr. Wolfe. Mr. Wolfe certainly understood the purpose of filing the summary judgment motion and hoped, as C&H did, that it would prompt Google to seriously address settlement negotiations. (Second Humphrey Decl. at ¶ 8.) The argument regarding the summary judgment motion is also refuted by the fact, addressed above, that there is no fixed requirement for independent counsel to review fee agreements and by Mr. Wolfe's strong endorsements of C&H.

Finally, we note that the summary judgment argument erroneously infers that work would cease following the filing of a summary judgment motion in a trademark opposition proceeding. (Wolfe Opposition at 3: would "likely suspend proceedings in the TTAB."). The suspension that occurs in a trademark opposition proceeding means simply that the parties may thereafter only file pleadings relating to the summary judgment motion until the Board rules on that motion. Considerable work often transpires thereafter and that was the case here. After C&H moved for summary judgment on behalf of Mr. Wolfe, Google requested a continuance to take more discovery of Mr. Wolfe under Fed. R. Civ. P. Rule 56(f). Mr. Wolfe opposed the motion. Google moved to strike the opposition. Mr. Wolfe opposed that motion. Thereafter, in April 2005, having taken all steps available to it to avoid a ruling on Mr. Wolfe's motion for summary judgment before the TTAB, Google determined it should drag Mr. Wolfe into another proceeding and filed the instant civil action in New York federal court, on the same day moving for a suspension of proceedings before the TTAB.

## CONCLUSION

For all of the reasons stated, Cameron & Hornbostel LLP respectfully submits that this Court should fix a charging lien in favor of C&H so as to preserve its statutory right under New York law to share in any amounts paid by Google under a judgment or in

settlement of the instant civil action and the pending TTAB proceeding. The amount to be paid and whether payment should be made in accordance with the fee Agreement or on a *quantum meruit* basis can be addressed at a later time but prior to the entry of a final order in this case.

Dated: December 1, 2006                                        Respectfully submitted,


/s/ Jayni Edelstein Alegria
Jayni Edelstein Alegria (JE 2408)
CAMERON & HORNBOSTEL LLP
866 United Nations Plaza
New York, N.Y. 10017
(646) 840-6666

and


/s/ Stephen L. Humphrey
Stephen L. Humphrey
CAMERON & HORNBOSTEL LLP
818 Connecticut Ave., N.W.
Washington, DC 20006
(202) 293-4690

**Attorneys for Cameron & Hornbostel LLP, former Counsel to Defendant/Counterclaimant, Richard Wolfe**

## Certificate of Service

I hereby certify that on December 1, 2006, I caused a copy of the following: **MEMORANDUM OF CAMERON & HORNBOSTEL LLP IN REPLY TO MR. WOLFE'S OPPOSITION TO ITS MOTION TO FIX A CHARGING LIEN** to be served by email and by first class mail, postage prepaid, on counsel for Plaintiff/Counter-Defendant, Ramsey M. Al-Salam, Esq., Perkins Coie LLP, 1201 Third Avenue, 40th Floor, Seattle, WA 98101; Richard F. Mandaro, Esq., Amster, Rothstein & Bernstein 90 Park Avenue, New York, NY 10016; and counsel for Defendant/Counterclaimant, Robert L. Powley, Powley & Gibson P.C., 304 Hudson Street, 2nd Floor, New York, NY 10013.

/s/ Stephen L. Humphrey
Stephen L. Humphrey