UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- -x
GOOGLE, INC.,                                                    :
A Delaware corporation,                                          :
                                                                 :   CV-05-1779(TCP) (ETB)
    Plaintiff/Counter-Defendant,                              :
                                                                 :
    v.                                                         :
                                                                 :
RICHARD WOLFE d/b/a                                              :
FROOGLES.COM,                                                    :
An individual,                                                   :
                                                                 :
    Defendant/Counterclaimant.                                 :
---------------------------------------------------------------- x

**SECOND DECLARATION OF STEPHEN L. HUMPHREY
IN SUPPORT OF MOTION TO FIX A CHARGING LIEN**

    STEPHEN L. HUMPHREY, a member of the bar of Washington, D.C., hereby declares the following under penalty of perjury:

    1.    I submitted a Declaration in support of C&H's motion to fix a charging lien. I hereby respectfully submit this Second Declaration in support of C&H's reply memorandum. I am an attorney admitted to practice in Washington, D.C. and a member of Cameron & Hornbostel LLP ("C&H"), a law firm with offices in Washington, D.C. and New York.

    2.    I have no doubt whatsoever in my mind that Mr. Wolf new and fully understood that when, in the midst of the TTAB proceeding, C&H agreed to forgo its original fee agreement and represent him on a strictly contingent fee basis, the agreement did not extend to and would not obligate C&H to represent him on a strictly contingent fee basis in any future lawsuit that Google might file against him. In an e-mail dated June 20, 2005 Mr. Wolfe acknowledged to me that he knew "all along" that C&H's

willingness to represent him before the TTAB on a contingency basis did not extend to the civil action filed by Google nearly eight months after the effective date of the contingency fee Agreement. A true and accurate copy of the e-mail from Mr. Wolfe dated June 20, 2005 is attached hereto as Exhibit A.

     3.     During and prior to the various conversations I had with Mr. Wolfe in regard to the possibility of C&H representing him on a contingency fee basis, Mr. Wolfe told me that he had approached a number of other attorneys with the request that they represent him on a strictly contingent fee basis but that none of them would agree to do so.

     4.     In early June 2004, Mr. Wolfe asked me to prepare an analysis of possible best and worst case scenarios and to address the possibility of C&H representing him on a contingency fee basis going forward. I responded to his request in an email dated June 4, 2004. A true and accurate copy of the e-mail I sent to Mr. Wolfe on June 4, 2005 is attached hereto as Exhibit B.

     5.     On July 21, 2004, with costs mounting, Mr. Wolfe again inquired whether C&H would represent him "on a strictly contingent basis." A true and accurate copy of the e-mail from Mr. Wolfe to me dated July 21, 2004 is attached hereto as Exhibit C.

     6.     On July 27, 2004 I reported by email to Mr. Wolfe on various developments and possible next steps and in that email commented on a possible partial contingency fee arrangement. A true and accurate copy of the e-mail from me to Mr. Wolfe dated July 27, 2004 is attached hereto as Exhibit D.

     7.     I recognized by the end of July 2004 that Mr. Wolfe would not be able to continue to pay C&H on an hourly rate basis as provided in our original engagement

letter. By August 2004 we had agreed to terms for a limited contingency arrangement. Mr. Wolfe did not pay C&H for any services provided to him on and after July 1, 2004 nor did I as the billing partner send Mr. Wolfe any invoices for legal services provided or costs incurred on and after July 1, 2004. Although Mr. Wolfe made payments to C&H after that date, those payments were for services and costs incurred prior to July 1, 2004.

       8.     C&H worked on the summary judgment motion through the fall of 2004, hoping to be able to move for summary judgment in the TTAB proceeding soon after completing discovery of Google, which we did in or about late November 2004. Mr. Wolfe and I were in full agreement that the purpose in filing the Opposition proceeding was to prevent Google from registering FROOGLE or to force it to compensate Mr. Wolfe for its violation of his trademark rights rather than risking judgment being entered against it in the TTAB proceeding. We were hopeful that the summary judgment motion would accomplish one result or the other. At the same time, we recognized that there was no way to tell when the TTAB might rule on such a motion or when or whether it would prompt Google to discuss settlement rather than continue the proceeding. C&H filed its summary judgment motion in the TTAB on December 12, 2004. By the end of December 2004 and prior to Mr. Wolfe returning a signed copy of the contingency fee agreement to C&H, C&H personnel had recorded time working on the case for Mr. Wolfe totaling more than $150,000 if the time were billed on an hourly rate basis.

     I hereby declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

                                                    /s/ Stephen L. Humphrey
                                                    Stephen L. Humphrey

Dated: Washington, D.C.
       December 1, 2006

# EXHIBIT A

## Stephen L. Humphrey

| | |
|---|---|
| **From:** | Info [info@froogles.com] |
| **Sent:** | Monday, June 20, 2005 2:22 PM |
| **To:** | Stephen L. Humphrey |
| **Subject:** | RE: FROOGLES |

Stephen I apologize for saying that this has come as a shock, you have told me all along that your firm
couldn't continue on a contingency basis in a federal lawsuit. Ididn't mean that it came as a surprise, but a shock of disbelief
that this was it, and nothing can be done.

You told me about two months ago that we couldn't go forward without the help of another law firm
and you tried so hard to get another law firm involved. I am devistated that we can't continue to get to the point
of getting to the negotiation table, and it hurts as I'm sure it does you.

I had a lot of faith that you would be able to get another law firm into this and that we could get to the negotiation table
Although you told me that the court could make you stay in the case once you started, it didn't register that we couldn't just drop out
and forfeit if we both decided that we couldn't go any farther.

You were my hero attorney. All the filings you made with the uspto and especially with the arbitration case were
exceptionally well thought out
and eloquently written. I really didn't have a doubt that if we went to trial that you could win the case. You were always
optomistic and when we won the arbitration
I felt that you could certainly win anything else that came flying from google. What shocks me is that I know you could win
this and that we can't continue.

You have believed in this case and done so much, so well that you gave me hope that we could overcome all obstacles that
google could throw at us.
I am just very hurt that money seems to win so often. I really thought that this was going to be front page headlines "David
conquers Goliath"
You have been so good in all that you have done that I am just devastated that all that hard work has led to this.

For your firm to take this on with a contingency fee was a blessing. I know that you have done everything that you could and
I thank you
from the bottom of my heart. We have been a team going through this and you have become more than a lawyer but also you
felt like a partner and friend.

Thank you again for all you have done. I realize that you can't go forward but I want to go down swinging, I don't know what
I am going to do, but I want to respond to the court
to at least buy some time, to try to figure something out.

Richard Wolfe

> **From:** Stephen L. Humphrey [mailto:shumphrey@cameron-hornbostel.com]
> **Sent:** Friday, June 17, 2005 6:12 PM
> **To:** Richard Wolfe (E-mail)
> **Subject:** FROOGLES
>
> Richard,
>
> As we have discussed in the weeks since Google filed its complaint in NY, and again in our telephone conversation earlier today, my firm is not able to represent you in the NY lawsuit on a contingent fee basis without the assistance of another law firm willing to

share in the substantial work the case will require. I have done my best to line up another firm but have not been able to do so. Therefore we will not be able to act as your legal counsel in the lawsuit and will not file a response to the suit in NY on your behalf.

As I said in our conversation earlier today, I have asked another lawyer in my firm to see if it might be possible for us to enter an appearance on your behalf for the limited purpose of asking the court to "stay" the suit, that is, in effect put the case in NY on hold and allow the opposition proceeding to continue in the US Trademark Office. We have considered combining that motion with a motion asking the court simply to dismiss the case outright as an alternative to entering a stay. However, as I said, it is very doubtful that such a limited appearance would be possible under the circumstances presented here.

We have drafted an answer to the complaint. One possibility might be for you to take the answer we have drafted and file it *pro se,* that is, on your own behalf without representation by legal counsel. That would perhaps buy some more time. The answer would be due by next Friday, June 24. We can discuss that idea further if you are interested. Frankly, however, the only realistic way to participate in the case is through a lawyer.

Please call me at any time (office, home or cell) if you have any questions or need some clarification or wish to discuss any aspect of this matter with me. I personally believe in the case and I know how much it means to you. Also, I have devoted literally hundreds of hours to the case since last year when we began working on a contingent basis. Other lawyers in my firm have invested significant amounts of time as well. For those reasons and others I hate to have it end this way. Nevertheless, my firm simply does not have the resources to take on Google on a contingent fee basis in a civil action filed in federal court in NY.

I should have an answer to the question whether a limited appearance is possible by Tuesday. We will talk then if not before. Best regards.

Steve Humphrey
Direct Dial: 202-293-3529
Cell Phone: 202-841-3767
Fax: 202-293-1877

CAMERON & HORNBOSTEL LLP
818 Connecticut Avenue, NW
Washington, DC 20006

# EXHIBIT B

Case 2:05-cv-01779-TCP-ETB   Document 61-6   Filed 12/01/2006   Page 7 of 15

| | |
|---|---|
| From: | Stephen L. Humphrey |
| Sent: | Friday, June 04, 2004 7:20 PM |
| To: | 'Richard Wolfe (E-mail)' |
| Subject: | Scenarios and Costs |

Hello Richard,

This is in response to your request for me to describe possible best and worst case scenarios and associated costs.

There are two matters pending at the present time. One is the proceeding we initiated in the Trademark Office to oppose Google's application to register the mark FROOGLE for Web-based shopping services (the "Opposition"). That matter is pending before the Trademark Trial and Appeal Board ("TTAB"). The second proceeding is the one initiated by Google under the Uniform Dispute Resolution Policy ("UDRP"). In that proceeding Google is seeking to have your domain name FROOGLES.COM transferred to it.

In my judgment we should take action in both matters during the coming six weeks or so. In the Opposition that means filing discovery, including interrogatories (written questions submitted to Google to answer in writing under oath) and document requests (requests to Google to make documents relevant to the Opposition available for us to review and copy). We might also file requests for admission (written statements to which Google must respond "true" or "false," e.g., "Complainant did not contact Respondent at any time between December 3, 2000 and March 19, 2003, and Complainant was not contacted by Respondent at any time during that period."),

Generally speaking a party to an Opposition will take depositions (an oral examination under oath recorded word-for-word by a reporter and prepared as a transcript) after receiving responses to its interrogatories and after reviewing and copying the documents produced in response to the document requests. It is possible, however, and for tactical reasons can be very useful, to take the other party's deposition at a very early stage in a proceeding before submitting interrogatories or document requests. There is a certain surprise element to this approach and it can aid in getting to the nub of a case more quickly.

When noticing a party for a deposition it is possible to identify categories of information that will be covered in the deposition (e.g., the process of selecting the FROOGLE mark, including alternative marks considered and searches or other investigations conducted). If the deponent is a corporation, as in this instance, the corporation can be required to provide witnesses to speak on its behalf in the deposition who are knowledgeable concerning the areas of inquiry identified in the deposition notice. A deposition notice may also require a party to bring certain requested documents or categories of documents to the deposition for review and use in deposing the witness or witnesses.

As you may appreciate it could be useful in the pending Opposition to issue a deposition notice to Google requiring it to make witnesses available and produce documents on a date specified, such as in two or three weeks from the date the notice is served. We would be required to travel to California to depose the Google witnesses.

In the UDRP matter there is no provision for interrogatories, depositions or other discovery. The rules provide that Google, as the Complainant, must submit a complaint (the "UDRP Complaint") in which it sets forth its reasons for claiming a right to force the transfer of the FROOGLES.COM domain

name and to attach to the Complaint any supporting documents it may wish to rely on in making its case. The rule is essentially that a party may submit whatever information, documents, cases, results of investigations, etc. it may wish to submit and the decision maker (referred to as the "Panel") will give such weight to the material submitted as it deems appropriate. In the response ("Answer") to the UDRP Complaint you as the Respondent are required to set forth all reasons, supporting case law and other information as to why you should not be required to transfer the domain name to Google and to include such attachments to the Answers as may seem useful to supporting your defense.

After the Answer is filed it is common for the Complainant to file a reply and, if it does, the Respondent may after receiving the reply file a reply as well. It is reasonable to assume that Google will file a reply in this instance and that we will thereafter file our own reply as well. The Panel typically is required to make its decision within 14 days of receiving a full set of all papers filed by both parties, unless additional time is requested and allowed. I would estimate that we will have a decision in the UDRP proceeding by or about the end of July.

Google has said in its UDRP Complaint that it wishes to have the matter decided by a single arbiter or Panelist. We have the right to request that the matter be decided by three Panelists. If only one Panelist is involved then Google is required to pay the costs in full. If we exercise our right to request three Panelists then we will need to include a check in the amount of $1,500 with the Answer when it is filed on or before June 23, 2004.

We do not need to make the decision just yet but I am leaning toward recommending that we request three Panelists be appointed to decide this dispute. It will be a significant decision to dismiss Google's Complaint, possibly triggering serious adverse consequences for Google just as it is preparing its IPO. The importance of the decision will not be lost on the Panel. It strikes me that it might be easier for two or three persons to decide together to dismiss the Complaint than for one person to take that step acting alone.

Under a "best case" scenario the Panel would decide the UDRP matter in our favor, dismiss Google's UDRP Complaint and state in its written decision that (i) the domain name FROOGLES.COM is not confusingly similar to the mark GOOGLE; (ii) you as Respondent hold legitimate interests in the disputed domain name; (iii) you did not register and have not at any time used the domain name in bad faith; and (iv) Google has abused the UDRP process by filing its Complaint in bad faith solely for the purpose of depriving you of a domain name for which you are the registered domain-name holder, a recognized practice referred to as "reverse domain name hijacking."

The Panel does not have authority to award damages or to take any punitive action against a complainant that it has found has engaged in reverse domain name hijacking. A finding by the Panel to that effect, however, can be helpful in the event that later court proceedings are required to address the question of Google's bad faith.

Continuing under the "best case" scenario, upon receipt of the Panel's decision Google would urgently initiate serious settlement discussions and offer to settle the entire dispute by purchasing the mark FROOGLES and the domain name FROOGLES.COM on terms that you dictate.

I estimate that this best case scenario would cost in the range of $25,000 to $30,000 from this point forward.

From a result standpoint in a "worst case" scenario we would lose both before the Panel in the UDRP proceeding and before the TTAB in the Opposition. Losing in the UDRP would mean the Panel orders your domain name be transferred to Google. Losing the Opposition would mean our effort to

deny Google a federal trademark registration for FROOGLE would be dismissed and the mark would proceed to publication, the last step in the application process before a mark is registered. There are appeal procedures in place for obtaining review of decisions in a UDRP proceeding and separately in an Opposition proceeding. However, as you can appreciate we would be facing a much more difficult up-hill battle in that event. Furthermore, although an adverse decision in the Opposition could probably be appealed to a US District Court locally, the UDRP appeal would be filed in Arizona, the principal place of business of your registrar, GoDaddy. Perhaps it is even possible the appeals could be consolidated before the court in Arizona.

Costs could easily reach $60,000 to $75,000 or more under this scenario.

From a cost standpoint, however, the "worst case" involves a somewhat different scenario. Google would vigorously oppose our every move as well as initiate further activity in new forums. In response to our discovery in the Opposition, for example, Google would file objections, refuse to file answers, refuse to produce or object to producing documents, request extensions of time to file answers and objections, file motions, employ other procedural tactics and in a myriad of ways both delay and complicate the TTAB proceeding, which invariably will increase the cost of the proceeding. They could effectively delay the matter for months, perhaps even a year. In the UDRP proceeding, even assuming we prevail, rather than immediately seeking a settlement, Google could appeal the decision to the federal court in Arizona. Of course in order to protect the favorable decision we would need to participate fully in the appeal. (You could perhaps envision not appealing a negative decision in the UDRP proceeding, but you would want to protect a favorable ruling through appeals and in other forums where the result might be threatened.) Once the matter is in federal court, Google might seek discovery from you, take your deposition, as well as depose retailers and the middlemen you deal with. These are ways to increase costs and bring additional pressure to bear. In a worst case scenario from a cost standpoint, Google would also file a lawsuit against you for trademark infringement and other claims, perhaps in California or some other jurisdiction remote from New York.

It is almost impossible to estimate total costs under this scenario. It is not unrealistic to think costs could reach $150,000 to $200,000 even before the infringement case had progressed much beyond its early stages.

It is possible Google will at some point be willing to pay a substantial sum to resolve this matter, and that may be more likely now than before it moved FROOGLE to its GOOGLE web site. It is planning an IPO, making SEC filings and promoting FROOGLE as an important new innovation. Presumably it would not want to be in a position of having to explain in SEC filings or elsewhere why its FROOGLE mark may be at risk. If the arbitrator in this proceeding concludes that FROOGLES.COM is not confusingly similar to GOOGLE, then it seems to me Google is in a bind. The decision in the UDRP proceeding is not controlling in the Opposition pending before the TTAB. However, it would certainly make Google's argument in that proceeding (i.e., that the mark FROOGLES is confusingly similar to the mark GOOGLE) more difficult to sustain. If it is not able to persuade the TTAB that the mark FROOGLES is confusingly similar to the mark GOOGLE, then its application to register FROOGLE in the US Trademark Office should and most likely will be thrown out because Google has already effectively conceded that it loses if the dispute before the TTAB is over your rights in FROOGLES vs. its rights in FROOGLE.

My recommendation is that we (i) take all steps reasonably available to us to obtain a favorable ruling from the Panel in the UDRP proceeding, and (ii) initiate discovery in the TTAB proceeding by filing an initial set of interrogatories and document requests on Google, deferring for now the question when to depose Google. I estimate that costs going forward on this basis through the point when a decision is issued by the Panel, essentially the coming two months, could reach $30,000 to $40,000. In

addition, a billing statement for April has or will soon be mailed, which is approximately $4,000. From my firm's standpoint it is important that we not allow the fees to get too far ahead of the payments. If we go forward for now as recommended here then I would request that you forward an additional retainer in the amount of $10,000 and pay the statement for April when it arrives or soon thereafter.

You inquired about the possibility of a contingent fee arrangement. As I mentioned I could not handle the matter on a strictly contingent fee basis. It might be possible, however, to reduce our regular hourly rates by a certain percentage, say 10 to 20%, for example, in exchange for a fixed percentage of any settlement or award. There are several ways to structure that sort of arrangement. My suggestion is that we defer serious discussion of possible contingent fee arrangements until after the Panel has issued its decision in the UDRP proceeding. We will have a much clearer picture then as to where we stand and what level of effort is likely to be required to conclude the matter from that point.

As I am sure you appreciate, estimating costs is especially difficult in litigation matters, which this is essentially. That is because such proceedings can move in unexpected directions. New issues will always arise requiring additional legal research and analysis, and in some instances there will be the need to file or respond to motions with legal memoranda and to attend and participate in hearings and depositions. Nevertheless I have attempted to project realistic cost estimates, which I trust will be helpful to you in planning and budgeting for this matter.

Please let me know if you have any questions or wish to discuss the matter of costs with me. Feel free to call me on the cell over the weekend if you want to. Best regards.

Steve Humphrey
Direct Dial: 202-293-3529
Cell Phone: 202-841-3767
Fax: 202-293-1877

CAMERON & HORNBOSTEL LLP
818 Connecticut Avenue, NW
Washington, DC 20006

# EXHIBIT C

| | |
|---|---|
| From: | Info [info@froogles.com] |
| Sent: | Wednesday, July 21, 2004 12:53 PM |
| To: | Stephen L. Humphrey |
| Subject: | RE: Newspaper Article |

Stephen, The last bill you sent floored me and also the people I had asked to lend me money. The legal fees mounted very quickly. At this point in time I am running out of resources and cannot continue to fight at the rate you are charging me.

It seems that the law is on my side but the funds are low. 18 hours to write a letter was overly expensive and to charge me for every little detail has scared away my potential backers to a degree. Bottom line is I cannot raise as much money as I was originally told.

Stephen this case is very important to me, this will make me or break me. Can you take this case on a strictly contingent basis. I believe that this case is going to set a precedent if won. You and your firm in my opinion and the opinion of others stand to benefit greatly in notoriety.

I have believed in you, and you have believed in me and the case after we came to understand each other. I am willing to listen to all offers and am willing to make arrangements with you for a larger stake if you can continue to fight this on a completely contingency basis. I would rather have something than nothing.

My back is up against the wall financially. The only hope that I have got at this point is to partner with you and fight together, I will help you in every way that I can, but at $2400 to almost $6000 per letter I cannot continue to fight. If you believe in this case the way I believe you do then partnering with me should be a definite option for you and your firm. How much belief do you have that we are going to win? I would rather have something than nothing, the original offer you made just deferred a 40% payment and gave you 25% of a potential settlement. I am willing to talk and negotiate, something is better than nothing.

Thank you, Richard Wolfe

# EXHIBIT D

Case 2:05-cv-01779-TCP-ETB   Document 61-6   Filed 12/01/2006   Page 14 of 15

# Stephen L. Humphrey

| | |
|---|---|
| From: | Stephen L. Humphrey |
| Sent: | Tuesday, July 27, 2004 6:31 PM |
| To: | 'Richard Wolfe (E-mail)' |
| Subject: | FW: Of Boobles, Froogles and Googles |

Richard, I thought you might be interested in seeing the exchange below with the reporter from CA.

I am analyzing possible next steps, including filing a lawsuit against Google for trademark infringement, and seeking a preliminary injunction against Google's use of Froogle while the infringement action is pending. In the present climate that filing might generate a new round of articles, and the combination might bring Google to the table for settlement discussions. I am also analyzing whether we could challenge Froogle.com in a UDRP Complaint, with confidence we would win. Two of my partners are assisting me in thinking through these options.

Another possibility is to focus on the opposition proceeding pending in the Trademark Office. I filed a request for documents last week, which Google must respond to within 30 days. The rules that govern opposition proceedings permit Google to produce its documents in CA where the company and presumably the documents are located. We could follow up now with a set of interrogatories and re-visit the timing for taking Google's deposition as well.

Another possibility here is that Google files an appeal, which as I have explained means essentially filing a lawsuit against you in a U.S. District Court claiming infringement, cybersquatting, trademark dilution and related claims. Google's deadline for filing an appeal and notifying the National Arbitration Forum that it has done so is next Tuesday, August 3rd. I had thought Google would appeal, and it still may; however, the extensive coverage of this dispute in the press and the positioning of you individually against this huge company may give them pause since filing another Complaint against you at this time could inspire a new wave of sympathetic stories.

These steps may require some type of partial contingent fee arrangement as we have discussed due to the likely costs involved. If you have any new thoughts on that or the possible alternative fee arrangements we have discussed please let me know.

Be sure to keep in mind that your communications with me are protected from disclosure under the attorney-client privilege. Your communications written or oral with family and friends or other third parties are not protected. If you are deposed, as you will be in the opposition and/or in any separate civil litigation, you will be asked about who you have discussed the matter with and what you and they said. It is not a reason not to speak with your friend Rich or your Aunt or other close family or friends. It is a good reason not to communicate with other third parties, especially people you do not know. As with the InternetNews reporter, please continue to refer all reporters and others who may contact you to me. And before you attempt to contact anyone about the case please let me know and let's discuss it first.

It might be a good idea for you to post a link to the panel decision on your website, perhaps along with a short note of thanks to people who have expressed support. We can talk about that. Hang in there. We can achieve a good result here through a careful blend of aggressive legal action, a friendly press and the goodwill of people who feel you are being wronged by Google. In the meantime I hope visits to Froogles.com continue to break new records and generate purchases by frugal shoppers. Best regards.

Steve Humphrey
Direct Dial: 202-293-3529
Cell Phone: 202-841-3767
Fax: 202-293-1877

CAMERON & HORNBOSTEL LLP
818 Connecticut Avenue, NW
Washington, DC 20006