UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------- -x
GOOGLE, INC.,                              :
A Delaware corporation,                    :
                                           :        CV-05-1779(TCP) (ETB)
            Plaintiff/Counter-Defendant,   :
                                           :
      v.                                   :
                                           :
RICHARD WOLFE d/b/a                        :
FROOGLES.COM,                              :
An individual,                            :
                                           :
            Defendant/Counterclaimant.     :
-------------------------------------------------------x
```

## DECLARATION OF STEPHEN L. HUMPHREY
## IN SUPPORT OF MOTION TO FIX A CHARGING LIEN

STEPHEN L. HUMPHREY, a member of the bar of Washington, D.C., hereby declares the following under penalty of perjury:

1.    I am an attorney admitted to practice in Washington, D.C. and a member of Cameron & Hornbostel LLP ("C&H"), a law firm with offices in Washington, D.C. and New York. C&H previously represented Richard Wolfe, Defendant/Counterclaimant in opposing registration of FROOGLE before the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("USPTO"). (Opposition Proceeding No. 91159991; hereinafter "Opposition proceeding".) I respectfully submit this declaration in support of C&H's motion for an Order fixing a charging lien to be satisfied out of the proceeds of any settlement in the instant civil action that also disposes of the pending Opposition proceeding, or any judgment as may be entered in Mr. Wolfe's favor.

Dockets.Justia.co

2.      On or about May 30, 2003, Richard Wolfe retained Cameron & Hornbostel LLP ("C&H") to represent him in registering and protecting his trademark FROOGLES. At the time Mr. Wolfe first contacted C&H, Google had already filed an application in the USPTO to register FROOGLE based on its intent to use the mark for a new online shopping service. C&H agreed to prepare and file an application to register the mark FROOGLES in the USPTO on behalf of Mr. Wolfe for a flat fee and to provide additional services based on hourly rates.

3.      C&H filed an application to register Mr. Wolfe's mark FROOGLES (Ser. No. 78297093) in the USPTO. Thereafter, FROOGLE was published for opposition. C&H filed a Notice of Opposition with the TTAB on March 26, 2004 seeking to prevent Google from registering FROOGLE based on Mr. Wolfe's prior rights in the mark FROOGLES. A true and accurate copy of the Notice of Opposition is attached hereto as **Exhibit 1**.

4.      Thereafter, on or about May 21, 2004, Google filed a Complaint under the Uniform Domain Name Dispute Resolution Policy ("UDRP") concerning Mr. Wolfe's use of the domain name froogles.com. The Complaint was submitted to the National Arbitration Forum (Claim No. FA0405000275419) for arbitration in accordance with Internet Corporation Assigned Names and Numbers ("ICANN") guidelines.

5.      C&H filed an Answer on behalf of Mr. Wolfe on June 23, 2004, including over 400 pages of exhibits in support. After additional filings were made on behalf of both parties, on July 18, 2004 a three-person panel, with one panelist dissenting, dismissed Google's Complaint finding that (i) Mr. Wolfe did not act in bad faith in selecting and using the domain name froogles.com for his shopping website; (ii) Mr.

Wolfe has a legitimate business interest in the domain name froogles.com; and (iii) the domain name froogles.com is not confusingly similar to the mark GOOGLE. A true and correct copy of the panel's decision is attached hereto as **Exhibit 2.**

6.      Mr. Wolfe and I discussed a possible contingent fee arrangement on a number of occasions in 2003 and early 2004. I told him that my firm was not in a position to handle the matter on that basis at that time. My firm's concern and hesitation about handling the matter on a contingent fee basis was based on our recognition of the fact that Google had unlimited resources to devote to this matter and as a small firm we did not.

7.      In late July 2004 Mr. Wolfe told me that legal costs were mounting at a rate that he could not keep up with and asked me again if my firm could continue to represent him in the Opposition proceeding but on a contingent fee basis. By this time Mr. Wolfe and I were developing a close working relationship. I recognized and accepted that his financial situation was such that he likely would not be able to pay for my firm's services on an hourly-rate basis. By the end of July 2004 Mr. Wolfe had paid C&H approximately $28,000 in legal fees.

8.      When Mr. Wolfe asked me in late July 2004 to handle the Opposition proceeding on a contingent fee basis, I told him that I would be willing to do so, but I would need the consent of my partners before committing C&H to a contingent fee arrangement.

9.      After the UDRP decision was issued, the parties turned their attention to discovery in the Opposition proceeding, though C&H had already served requests for admission on Google in that proceeding. Google appointed three attorneys from the firm Winston & Strawn LLP to represent it before the Trademark Trial and Appeal Board.

10.     C&H continued to work on the many facets and widening scope of the dispute with Google on almost a daily basis through July and August 2004.

11.     C&H entered into a Legal Services Agreement effective as of September 1, 2004 (the "Agreement") under the terms of which C&H agreed to represent Mr. Wolfe in the Opposition proceeding on a contingent fee basis. A true and correct copy of the Agreement is attached hereto as **Exhibit 3.**

12.     The Agreement provides that C&H shall receive 35% "of any consideration received by [Mr. Wolfe] from Google or any third party in any settlement of the Opposition Proceeding . . . ." (Agreement at ¶ 3(a).) It also provides, however, that in the event that the TTAB rules against Mr. Wolfe and does not refuse registration of FROOGLE, C&H "will receive no attorney's fees with respect to the representation." (Agreement at ¶ 3(c).) The Agreement is governed by the laws of the State of New York.

13.     The Agreement also provides that C&H "shall have a lien for Attorney's fees and costs advanced . . . on all proceeds of any settlement . . . ." (Agreement at ¶ 7.)

14.     C&H continued to represent Mr. Wolfe in the Opposition proceeding until Mr. Wolfe's counsel in the instant case was substituted in its place in July 2005. Between July 1, 2004 and the end of July 2005, C&H lawyers and paralegals recorded over 600 hours of time spent in representing Mr. Wolfe in the Opposition proceeding and related initiatives. As noted in paragraph 21 below, copies of C&H's detailed time and billing records for the period July 1, 2004 through December 31, 2004 were delivered to Mr. Wolfe's counsel in the civil action in response to a document production request served by Google.

15.    Having taken discovery of Google, and after having fully responded to Google's discovery requests, in December 2004 C&H moved the TTAB for summary judgment against Google in the Opposition proceeding. Google in response moved for a continuance. By the end of March 2005, after Google's motion had been fully briefed by the parties, Mr. Wolfe's summary judgment motion and Google's motion for continuance were ready for decision by the Board.

16.    On April 8, 2005, however, before the TTAB could rule on the pending motions, Google filed the instant civil action in New York and that same day moved the TTAB for suspension of the Opposition proceeding.

17.    The fee Agreement between Mr. Wolfe and C&H by its own terms does not extend to the filing of a civil action by Google. C&H was not in a position to represent Mr. Wolfe in the civil action filed by Google in New York on a contingent fee basis. Nevertheless, it was prepared to represent Mr. Wolf in that proceeding if a second law firm could be identified to participate in the case as co-counsel. We discussed this with Mr. Wolfe on multiple occasions after the civil action was filed. To that end we worked diligently contacting other firms beginning promptly after the action was filed and continuing until Mr. Wolfe's present counsel agreed to represent Mr. Wolfe in the civil action in or about June 2005.

18.    C&H opposed Google's motion for suspension on behalf of Mr. Wolfe.

19.    During May and June 2005, after the civil action had been filed, I contacted the Chambers of The Honorable Thomas C. Platt, Senior Judge in an effort to obtain an extension of time for Mr. Wolfe to respond to Google's Complaint so as to avoid having judgment entered against him by default as we attempted to line up counsel.

A true and accurate copy of my correspondence with the Court is attached hereto as **Exhibit 4**.

20.    In or about late June 2005 Mr. Wolfe informed me that Robert L. Powley, Esq. of The Law Office of Robert L. Powley had agreed to represent him in the civil action and that he had already signed or planned to sign a new contingent fee agreement with Mr. Powley's firm. He told me that he had given or shown a copy of C&H's fee Agreement to Mr. Powley. Mr. Wolfe indicated that Mr. Powley did not wish to cooperate with my firm in the matter. I attempted to reach Mr. Powley by phone several times but he did not respond.

21.    I provided copies of hundred of pages of pleadings and other documents C&H had filed, received or produced in the UDRP proceeding and in the Opposition proceeding to Mr. Powley. In April 2006 Google served a request for documents in which it specifically requested my firm's billing records. Mr. Powley's firm forwarded the request to me and asked that I forward the requested documents to their office. On April 28, 2006 C&H produced its detailed time and billing records to Mr. Wolfe's counsel as requested. I do not know whether the records were actually produced to Google.

22.    Thereafter, on July 12, 2005, Mr. Powley filed a Power of Attorney signed by Mr. Wolfe appointing Mr. Powley attorney of record in the Opposition proceeding and revoking my prior appointment. I was not notified of the filing nor did I receive a copy of it. I learned of the substitution in the course of monitoring the Opposition proceeding docket in the TTAB.

23.    C&H does not object to being substituted by other counsel in the Opposition proceeding. C&H fully respects its client's right under New York law to

terminate the attorney-client relationship at any time. However, C&H's motion filed herewith seeks to protect C&H's right to the payment of its contingent fee out of the proceeds of a judgment or settlement in this case that also disposes of the Opposition proceeding, by requesting an Order directing that a charging lien be granted as to the proceeds of any such settlement or judgment.

24.     C&H appeared as attorneys of record for Mr. Wolfe in the Opposition proceeding and participated in all legal proceedings on Mr. Wolfe's behalf, as is required before a charging lien may be granted. C&H devoted over 600 hours working on the Opposition proceeding on behalf of Mr. Wolfe. C&H represented Mr. Wolfe on an hourly rate basis prior to July 1, 2004. Mr. Wolfe paid C&H a portion of its fees and expenses totaling approximately $40,000 in connection with services rendered prior to that date. Thereafter, however, in reliance on the contingent fee Agreement, C&H provided its services and incurred expenses on Mr. Wolfe's behalf with the expectation and understanding that it would share in the proceeds of any settlement that provided for Google to pay or grant consideration to Mr. Wolfe in exchange for his agreement to terminate the Opposition proceeding. It would be profoundly unfair for Mr. Wolfe to be permitted to collect sums under a judgment or settlement of the Opposition proceeding without compensating C&H in accordance with the fee Agreement or the fair value of its services rendered and costs incurred.

25.     For all of these reasons, we respectfully request that this Court issue an Order fixing a charging lien to be satisfied out of the proceeds of any judgment or settlement as may be entered or reached in this civil action that includes or involves a dismissal or other disposition of the Opposition proceeding.

I hereby declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Stephen L. Humphrey

Dated: Washington, D.C.
October 3 1, 2006

# Exhibit 1

*Tab D*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the matter of Application Serial No. 78187946
For the mark: FROOGLE
Published in the Official Gazette on February 17, 2004

|||||||||| |||||| ||||||| ||||||| ||||| ||||| |||||

**03-26-2004**

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #22

| | | |
|---|---|---|
| Richard Wolfe, d/b/a FROOGLES.COM, an individual, | ) ) ) | |
| Opposer, | ) ) | Opposition No. |
| v. | ) ) | |
| Google Technology Inc., a California Corporation, | ) ) ) ) | |
| Applicant. | ) | |

### NOTICE OF OPPOSITION

Richard Wolfe, an individual, d/b/a FROOGLES.COM, having a principal place of business at 17 Castle Lane, Holtsville, NY 11742, believes he will be damaged by registration of the mark FROOGLE, shown in Application Serial No. 78187946, and hereby opposes the application for registration. The specific grounds for this Opposition are as follows:

1.      Google Technology Inc. ("Applicant") is, upon information and belief, a California corporation having a place of business at 2400 Bayshore Parkway, Mountain View, CA 94043.

2.      Applicant has applied to register the mark FROOGLE in International Class 42 for a web site that, among other related services, provides users information on various

03/29/2004 JBROOKS1 00000027 78187946

01 FC:6402              300.00 OP

In the matter of Application Serial No. 78187946

consumer products, enables users to search for and compare prices and other information

concerning similar products and includes online web links to other web sites where

products may be purchased.

3.      Applicant filed its intent-to-use application on November 22, 2002.  Thereafter,

on November 7, 2003 Applicant filed an amendment to its application alleging that it first

used the FROOGLE mark on December 11, 2002.

4.      The address for Applicant's web site where it offers the services described above

under the FROOGLE mark may be found at www.froogle.google.com.  Inquiries to

www.froogle.com are redirected to that site as well.  Copies of sample pages from the

FROOGLE web site are attached hereto as Attachment 1.

5.      Opposer is the owner of Application Serial No. 78297093 for the mark

FROOGLES.  Opposer applied to register its FROOGLES mark on September 8, 2003

for use in providing, among other services, an online computer database that enables

users to locate and compare prices for a wide variety of consumer products as well as

access links to merchants that sell those products and ordering services that enable users

to purchase products online.

6.      Upon information and belief, the services provided by Applicant under the

FROOGLE mark are similar and related to the services provided by Opposer under the

FROOGLES mark.

7.      The address for Opposer's web site where it offers the services described above

under the FROOGLES mark may be found at www.froogles.com.  Copies of sample

pages from the FROOGLES web site are attached hereto as Attachment 2.

2

In the matter of Application Serial No. 78187946

8.    Upon information and belief, Opposer's actual, continuous and continuing use of the FROOGLES mark in providing services as described above and more fully in its pending application began prior to any use by Applicant of the FROOGLE mark.

9.    Upon information and belief, Applicant's asserted FROOGLE mark so resembles Opposer's FROOGLES mark as to be likely, when used in connection with the services identified in Applicant's application, to cause confusion, to cause mistake, or to deceive customers as to the source and origin of Applicant's services rendered under the FROOGLES mark.

WHEREFORE, Opposer believes that it would be damaged by registration of the FROOGLE mark, and prays that Application Serial No. 78187946 be rejected, that no registration be issued thereon to Applicant, and that this opposition be sustained in favor of Opposer.

A duplicate of this Notice of Opposition is being filed herewith, together with a filing fee of $300.00.

Dated:  March 24, 2004                     Respectfully submitted,

*Stephen L. Humphrey*

Stephen L. Humphrey

CAMERON & HORNBOSTEL LLP
818 Connecticut Avenue, NW
Washington DC 20006
Phone: (202) 293-4690
Fax: (202) 293-1877
E-mail:shumphrey@cameron-hornbostel.com

　　　　　Attorney for Opposer,
　　　　　Richard Wolfe, d/b/a
　　　　　FROOGLES.COM

3

In the matter of Application Serial No. 78187946

**CERTIFICATE OF MAILING**

Date of Mailing and Signature: March 24, 2004

I hereby certify that this paper is being deposited with the United States Postal Service as First Class Mail, postage prepaid, on the date indicated above, in an envelope addressed to:

Commissioner for Trademarks
BOX TTAB – FEE
2900 Crystal Drive
Arlington, VA.  22202-3513

Stephen L. Humphrey

4

In the matter of Application Serial No. 78187946
Filed by Richard Wolfe, an individual, d/b/a FROOGLES.COM, Opposer

# ATTACHMENT 1

# Froogle™
### BETA

| Search Froogle | • Advanced Froogle Search
• Preferences

## Find products for sale from across the web.

**Apparel & Accessories**
Jewelry, Men's, Women's, ...

**Business & Industry**
Construction, Science & Technology, ...

**Health & Personal Care**
Fragrance, Makeup, Skin Care,

**Arts & Entertainment**
Art, Collectibles, Crafts & Hobbies, ...

**Computers**
Notebooks, PDAs, Software, ...

**Home & Garden**
Home Furnishings, Kitchen, Pel

**Auto & Vehicles**
Auto Accessories, Boats & Marine, ...

**Electronics**
Audio, Cameras, TV & Video, ...

**Office**
Office Equipment, Office Suppli

**Baby**
Nursing & Feeding, Strollers, ...

**Flowers**
Arrangements, Roses, ...

**Sports & Outdoors**
Cycling, Golf, Team Sports, ...

**Books, Music & Video**
Books, Music, Video, ...

**Food & Gourmet**
Beverages, Food, Gift Baskets, ...

**Toys & Games**
Dolls, Games, Video Games, ...

Google Home - Froogle Help - Information for Merchants

©2004 Google

# Froogle
BETA

Advanced Froogle Search    Preferences    Froogle Help

[ Search Froogle ]    [ Search the Web ]

◉ Search within Sports & Outdoors    ○ Search all of Froogle

## Sports & Outdoors

Froogle Home > Sports & Outdoors

 Baseball & Softball

 Basketball

 Bowling

 Climbing

 Cycling
Bicycles, Helmets, ...

 Fan Merchandise

 Fishing & Hunting
Decoys & Calls,
Rods & Reels, ...

 Fitness
Exercise Machines,
Fitness Equipment, ...

 Football

 Golf
Bags, Clubs & Sets, ...

 Hockey

 Martial Arts

 Other Sports
Air Sports, Equestrian, ...

 Outdoors & Camping
Coolers, Sleeping Bags, Tents, ...

 Paintball

 Skating & Skateboarding
In-Line Skates, Skateboards, ...

 Snow Sports
Skiing, Snowboarding, ...

 Soccer

 Team Sports
Baseball & Softball, Football,
Soccer, ...

 Tennis & Racquet Sports

 Water Sports & Boating
Swimming & Diving,
Waterskiing, ...

Froogle Home - Google Home - Froogle Help - Information for Merchants
©2004 Google

 ™
BETA

Advanced Froogle Search     Preferences     Froogle Help

[ Search Froogle ]   [ Search the Web ]

(•) Search within Men's Apparel   ( ) Search all of Froogle

# Men's Apparel

Froogle Home > Apparel & Accessories > Men's

 **Accessories**
Belts, Hats, Ties, ...

 **Shoes**
Boots, Casual Shoes, ...

 **Active Wear**

 **Socks**

 **Outerwear**

 **Underwear**

 **Pants**

 **Tops**
Dress Shirts, Sweaters, T-
Shirts, ...

 **Froogle** BETA

Advanced Froogle Search    Preferences    Froogle Help

[Search Froogle]    [Search the Web]

○ Search within Electronics    ○ Search all of Froogle

## Electronics

Froogle Home > Electronics

 **Audio**
Car Audio & Video,
Portable Audio,
Speakers, ...

 **Cameras**
Camcorders,
Digital Cameras,
Film Cameras, ...

 **Communications**
Cell Phone Accessories,
Telephones, ...

 **Components & Parts**

 **Accessories**
Batteries,
Remote Controls, ...

 **GPS & Navigation**

 **Optics**
Binoculars, Telescopes, ...

 **Other Electronics**

 **Printers, Copiers, & Fax Machines**
Printers, Toner & Accessories, ...

 **Projectors**
Multimedia Projectors,
Overhead Projectors, ...

 **TV & Video**
DVD Players, Televisions, VCRs, ...

In the matter of Application Serial No. 78187946
Filed by Richard Wolfe, an individual, d/b/a FROOGLES.COM, Opposer

# ATTACHMENT 2



Bookmark froogles™ !

March 2

## Every Day Specials

-Get 5 DVDs for 49 cents each with FREE shipping! click to See Details
-$39 prescription eyeglasses
-Gift Certificates send snail or email
-Save 50% on dining and fun
-UNLIMITED dial up Internet $6.95
-Place free classified ads
-Discount Cheap Airline Tickets
-Slash your student loans 53%!!!
-Today's Deals At Amazon
-Call Anywhere in USA for 1c a minute Calling Cards

## Froogles Bargains

**HOT!** 6X DVD+RW/+R FREE SHIPPING $77

Canon i470D 4800x1200dpi Photo Printer w/Built-in Media Reader Final Price: $39.99

*click here to see how cheap the ink is

## Coupons

-10% off your order at Target
-$25 off cameras and camcorders
-Elisabeth by Liz Claiborne 10% off
-$20 off $100 Office Depot
-$10 off $49 @ kbtoys
$10 off $50 at egadgets
$10 off $40 at candlebay
See All Coupons

## Toys and (

-Save 50% or more or
-Toysrus Daily Hot De
-Save on PS2 Greatest
-ToyWorld quality toy
-Microsoft Xbox Cons $179
-Kmart toys and game
-Target toys and gam
-Smart Bargains on to
-FREE Shipping on sel minimum order

## Special Offers

Froogles endorses the entertainment book as one of the best frugal, money saving offers available. These coupon books contain several thousands of dollars in discounts. Save when you go out to eat, go to the movies, rent a car, and much more. Get $5 off and Free Shipping! Click Here to see where you can save in your neighborhood.

## Wholesale Jewelry and Gemstones

Genuine pearl w/ silk necklace $19.99



Tanzanitegem.com

## Free Ship

-FREE Shipping at the
-Target FREE SHIP en
-FREE Shipping on toy no minimum order
-Hardwood Floors - Fr
-Laminate Flooring - F
-Free Shipping at Best

TOYSRUS.C

-Amazon free shipping (some restrictions app

## Appliances



Most Major Appliances
$65 Shipping or less

NO SALES TAX (Outside Of IL, IN, WI & MI) FREE SHIPPING - Sony, Yamaha, Bose & Big Screens

## Useful links

Reference Desk- very useful site
TV Guide - Need to know what's on?
The Official US Time
US Weather
Free personal email certificate
Make money taking surveys
**Online computer help**
protonic  computerhope  help-site

Unlimited Toll-Free PC Tech Support $89 A Year

## Buy 1Get 1 Free

BUY 1 GET 1
**FREE!**
HURRY!
LIMITED TIME OFFER!
⚇ Click Here!

## Clearance/R

Clearance Shop at Ov
Circuit City Clearance
Tiger Direct Clearanc
Kmart Clearance
Shop Target.com's Cl

Rebates at Office Ma
Rebates at BestBuy.c
Tech Depot REBATE (
All the Circuit City Re
Radio Shack Rebate (

## Main Categories

Accessories

Art - Crafts

## Subcategories (description)

➤ Eyewear  Fragrances  Handbags  Jewelry  Shoes  Watches

➤ Art&Prints  Arts&Crafts  Picture frames  Posters

Astrology
➤ Get a Free Daily Numerology Report, karma report, compatibility report

Automotive
➤ Auto Parts   Autos   Motorcycle   Tools

Books-Media
➤ Audio Books   Books   eBooks   Magazines   Newspapers   Short Stories

Business
➤ Business Opportunity   Gifts   Marketing   Services   Software   Supplies

Careers
➤ Jobsites   Resume Services   Work at Home

Clothing
➤ Babies   Children's   Men's   Women's

Commerce
➤ Auctions   FREE Classified Ads   eCommerce Solution Providers

Computers
➤ Hardware   Software   Supplies   Support

Coupons
➤ NEW! Online Coupon Codes

Education
➤ Children   College   Computer   Essay   High School   Languages   Professional

Electronics
➤ Batteries   Cellphones   Gadgets   Home Electronics   Parts   Satellite Dish

Entertainment
➤ Entertainment Guide   Outdoors   Gambling

Family
➤ Fun and Safety for Baby, Children and Pets

Finance
➤ Online Banking   Credit Cards   Insurance   Investment   Loans   Real Estate

Food-Drinks
➤ Drinks   Ethnic   Gourmet   Groceries   Restaurants

Free Stuff
➤ Freebies-Make Money Surfing the Web-Downloads-Reward Programs

NEW! Froogles Community Forums
➤ NEW! Coupons   NEW! Mr Froogles Bargains   NEW! Froogles Funnies   NEW! Deal Discussion   NEW! Free St

Fun Page
➤ Daily Quotes - NEW! Play Free online games - USA fun facts

Games-Toys
➤ Computer Games   Games   Online Games   Toys/Hobbies   Video Games

Gifts-Flowers
➤ Baby   Gift Baskets   Collectible   Executive   Flowers   Gadgets   Gourmet   Unique   Wedding

Health-Beauty
➤ Bath-Body   Cosmetics   Diabetes   Health Food   Herbs   Pet Health   Rx   Vitamins   Wellness

Home-Garden
➤ Appliances   Bed-Bath   Construction   Flooring   Garden   Kitchen   Pets   Real Estate   Tools

Hot Deals
➤ Some of the best deals on the internet

Legal Services
➤ Online Legal Services

Malls
➤ Malls or Large Online Stores that have a tremendous selection

Matchmaking
➤ Find the best free and paid online dating services.

Medical
➤ Medical Supplies and Health Care Products for the Medical Professional

Movies
➤ DVD's-VHS - Watch Movies on your Computer - Rent DVD's Online

Music
➤ Musical Instruments   CD's   Music Merchandise   MP3's

Party Goods
➤ Party Goods and Supplies

Search
➤ Search froogles, Amazon, eBay, or the internet from here

Sports-Fitness
➤ Clearance   Fishing   Fitness   Golf   Hunting   MartialArts   SportingGoods (construction zone)

Telephone
➤ Best Rate Calculator   Calling Cards   Cellular   1-800 Toll Free

Television
➤ Infomercial Products   Free Satellite Dish With free Installation

Tobacco
➤ Tax Free Discount Cigarettes   Free Shipping on Cigars

Tools
➤ Industrial Tools and Supplies

Travel
➤ Dream Vacation Finder   Airlines   Hotels   Travel Auctions   Vacations   Luggage

Web-Services
➤ Domain-Names   Email   Service Providers   Promotion   Site Building   Hosting

Home | Froogles Forums | Search | About Us | Privacy Policy | Advertising

Copyright © 2001-2004 Froogles™ All rights reserved.
Questions about advertising on the froogles™ website?
froogles™ logo design by K3graphics | site hosted by ciahost.net



home > sports-fitness

Clearance • Fishing • Fitness • Golf • Hunting • Martial Arts • Sporting Goods

Accessories
Arts-Crafts
Astrology
Automotive
Books-Media
Business
Careers
Clothing
Commerce
Compare Prices
Computers
Education
Electronics
Entertainment
Family Page
Finance
Food & Drinks
Free Stuff
Frugal Tips
Fun Page
Games-Toys
Gifts
Hand Crafted
Health-Beauty
Home-Garden
Hot Deals
Legal Services
Malls
Medical Supplies
Movies-DVD-VHS
Music-CD-MP3
Party Goods
Personals
Sports-Fitness
Telephone
Television
Tobacco
Travel
Web Services
Affiliates
Biz Opportunity

★ Find the Best Prices on Sports Equipment

Home | Froogles Forums | Search | About Us | Privacy Policy | Advertising

Copyright © 2001-2004 Froogles™ All rights reserved.
Questions about advertising on the froogles™ website?
froogles™ logo design by K3graphics | site hosted by ciahost.net



home > clothing



Women's • Babies •
Children • Design your own T-shirt • Men's

Visit T-Shirt King - 1,000's of designs in-stock! Click here

Accessories
Arts-Crafts
Astrology
Automotive
Books-Media
Business
Careers
Clothing
Commerce
Compare Prices
Computers
Education
Electronics
Entertainment
Family Page
Finance
Food & Drinks
Free Stuff
Frugal Tips
Fun Page
Games-Toys
Gifts
Hand Crafted
Health-Beauty
Home-Garden
Hot Deals
Legal Services
Malls
Medical Supplies
Movies-DVD-VHS
Music-CD-MP3
Party Goods
Personals
Sports-Fitness
Telephone
Television
Tobacco
Travel
Web Services
Affiliates
Biz Opportunity

## Babies Specials

10% OFF and FREE GROUND SHIPPING
on orders of $70 or more for FIRST
TIME SHOPPERS at Jordanmarie.com

## Children's Specials

$10 or less Baby and Children's
Clothing at WebClothes.com!

## Men's Specials

## Women's Specials



get $20 off any
order of $75 or
more. The code is:
UM2075

<----Click the
picture







# Exhibit 2



NATIONAL

ARBITRATION

FORUM

## DECISION

Google, Inc. v. Richard Wolfe
Claim Number: FA0405000275419

**PARTIES**

Complainant is **Google, Inc.** ("Complainant"), represented by **Rose A. Hagan**, 1600
Amphitheatre Parkway, Building 41, Mountain View, CA 94043.  Respondent is
**Richard Wolfe** ("Respondent"), represented by **Stephen L. Humphrey** of **Cameron &
Hornbostel LLP**, 818 Connecticut Avenue NW, Washington, DC 20006.

**REGISTRAR AND DISPUTED DOMAIN NAME**

The domain name at issue is **<froogles.com>**, registered with **Go Daddy Software, Inc**.

**PANEL**

The undersigned certify that they have acted independently and impartially and to the
best of their knowledge have no known conflict in serving as a Panelist in this
proceeding.

Hon. Charles K. McCotter, Jr., (Ret.), Hon. John J. Upchurch, (Ret.) and Hon. Richard B.
Wickersham, (Ret.), as Panelists.

**PROCEDURAL HISTORY**

Complainant submitted a Complaint to the National Arbitration Forum (the "Forum")
electronically on May 21, 2004; the Forum received a hard copy of the Complaint on
June 1, 2004.

On May 21, 2004, Go Daddy Software, Inc. confirmed by e-mail to the Forum that the
domain name **<froogles.com>** is registered with Go Daddy Software, Inc. and that
Respondent is the current registrant of the name.  Go Daddy Software, Inc. has verified
that Respondent is bound by the Go Daddy Software, Inc. registration agreement and has
thereby agreed to resolve domain-name disputes brought by third parties in accordance
with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On June 3, 2004, a Notification of Complaint and Commencement of Administrative
Proceeding (the "Commencement Notification"), setting a deadline of June 23, 2004 by
which Respondent could file a Response to the Complaint, was transmitted to

Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@froogles.com by e-mail.

A timely Response was received and determined to be complete on June 24, 2004.

Complainant filed an Additional Submission and Respondent replied thereto, which were fully reviewed and considered by Panelists.

On July 8, 2004, pursuant to Respondent's request to have the dispute decided by a three-member Panel, the Forum appointed Hon. Charles K. McCotter, Jr., (Ret.), Hon. John J. Upchurch, (Ret.) and Hon. Richard B. Wickersham, (Ret.), as Panelists.

## RELIEF SOUGHT

Complainant requests that the domain name be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS

A. <u>Complainant</u>

Google was created in 1997 by Stanford Ph.D. candidates Larry Page and Sergey Brin. Since that time, Google has become one of the largest, most highly recognized, and widely used Internet search services in the world. Google's primary website is located at <google.com>.

Currently, the GOOGLE search engine has an index of over 4 billion web pages. The GOOGLE search engine offers Internet users an easy-to-use interface, advanced search technology, and a comprehensive array of search tools. In addition, the GOOGLE search engine allows Internet users to search for and find content in many different languages; access stock quotes, maps, and news headlines; access telephone book listings for every city in the United States; and retrieve more than 22 millions .PDF documents.

Google's website is one of the most popular destinations on the Internet. For example, Nielsen NetRankings ranked Google as number 5 of the Top 25 Web Properties for the month of March 2003.

Google also offers co-branded web search solutions for information content providers, and has partnerships with 130 companies in more than 30 different countries, including some of the Internet's most prominent players.

Google offers software and hardware products. The GOOGLE toolbar is a free, downloadable software program which appears as a toolbar along with the Internet Explorer toolbar and which allows users to quickly and easily use Google's search services from any website location, without having to return to Google's home page to begin another search. The GOOGLE search appliance is an integrated software and

hardware product, marketed to both small and large companies, that provides Google's search services, including indexing, for use in internal corporate networks and intranets.

The GOOGLE mark identifies Google's award-winning, propriety, and unique search services, search engine technology, and associated services. Having been widely promoted among members of the general consuming public since 1997, and having exclusively identified Google, Google's GOOGLE mark and name symbolize the tremendous goodwill associated with Google and are property rights of incalculable value. Furthermore, due to widespread and substantial international use, Google's GOOGLE mark and name have become famous.

Google is the owner of United States Trademark Registration No. 2,806,075 for the GOOGLE mark covering search and communication services in International Classes 38 and 42. Google is also the owner of U.S. trademark applications, including Application Serial No. 75/554,461 filed September 16, 1998, covering computer hardware and software in International Class 9.

B. Respondent

Respondent in this case created and maintains a shopping website at **<froogles.com>**. The website seeks to attract "frugal" shoppers by offering a wide variety of quality merchandise at discounted or sale prices. Mr. Wolfe began planning his website in mid 2000, when Internet shopping was becoming increasingly popular. Since its inception, Mr. Wolfe has worked daily maintaining and improving the **<froogles.com>** website. As a result of Mr. Wolfe's diligent efforts, today the **<froogles.com>** website comprises approximately 400 pages of product listings, information on product discounts, price comparisons, daily specials and promotions, and over one thousand links to approximately 700 different retailers. Mr. Wolfe receives commissions from retailers whose products are sold as a result of being included in the **<froogles.com>** website.

Mr. Wolfe chose the domain name at issue because it was a play on the word "frugal," which was not available. Other considerations included were that the word is easy to spell, it has a nice "ring" to it, and because the "s" on the end of the word reminds him of well-known department stores. It has always been Mr. Wolfe's intent and goal to create a self-sustaining, long-term Internet business with the **<froogles.com>** website.

In creating and maintaining his website, Mr. Wolfe has never sought to trade on the goodwill of any other company, including Google, or suggest any affiliation or association with Google. Nor has he ever offered the **<froogles.com>** domain name for sale or rental. Since launching his website over three years ago, Mr. Wolf has never received any complaint, inquiry or communication of any kind from Complainant, until this dispute arose.

It appears that the Complaint in this domain name dispute was filed because Mr. Wolfe filed a Notice of Opposition in Google's pending application to register the mark FROOGLE in the United States Patent and Trademark Office ("PTO"). He filed the

Notice of Opposition on March 24, 2004. Google had filed its application in the PTO on September 8, 2003 based on its intent to use the FROOGLE mark in offering a shopping service on the Internet.

Google's filing of its Complaint in this action is an apparent effort to coerce Mr. Wolfe into withdrawing his opposition to Google's application in the PTO. Indeed, in an email dated May 11, 2004, Google's counsel represented that if Mr. Wolfe would withdraw his opposition to Google's application to register its mark FROOGLE, then Google would not object to Mr. Wolfe continuing to operate his website at **<froogles.com>**. Google made it quite clear in its email that if Mr. Wolfe refused, Google would initiate proceedings to have his domain name taken from him and transferred to Google. Mr. Wolfe did refuse and Google responded by initiating this proceeding. Google has effectively engaged in Reverse Domain Name Hijacking.

C. <u>Additional Submissions</u>

Both Respondent and Complainant filed an Additional Submission, which was carefully reviewed by the Panel and duly considered.

## FINDINGS AND DISCUSSION

Paragraph 15(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that the Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights; and
(2) Respondent has no rights or legitimate interests in respect of the domain name; and
(3) the domain name has been registered and is being used in bad faith.

**<u>Identical and/or Confusingly Similar</u>** *Policy ¶ 4(a)(i).*

The **<froogles.com>** domain name is not confusingly similar to Complainant's GOOGLE mark. The dissimilar letters in the domain name are sufficiently different to make it distinguishable from Complainant's mark because the domain name creates an entirely new word and conveys an entirely singular meaning from the mark. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1147 (9th Cir. 2002) ("Similarity of marks or lack thereof are context-specific concepts. In the Internet context, consumers are aware that domain names for different websites are quite often similar, because of the need for language economy, and that very small differences matter."); *see also Thomas Cook Holdings Ltd. v. Aydin*, D2000-0676 (WIPO Sept. 11, 2000) (finding that the domain name, <hot18to30.com>, is neither identical nor confusingly similar to Respondent's

trademark "Club 18-30"); *see also Copart, Inc. v. SalvageNow*, D2000-0417 (WIPO June 28, 2000) (finding that the domain name at issue <copart.net> is not identical to nor substantially similar to the mark registered and used by Complainant, "CI Copart Inc. Salvage Auto Auctions").

In addition, Complainant has failed to provide evidence of Internet confusion and therefore has failed to fulfill its burden of proof. In the Response, Respondent has attached examples of other companies using the "oogle" in their domain names and trademarks. *See B2BWorks, Inc. v. Venture Direct Worldwide, Inc.*, FA 97119 (Nat. Arb. Forum June 5, 2001) (holding that Complainant did not have exclusive rights to use of the terms "B2B" and "Works" in association with other words, even with a registered trademark for B2BWORKS).

Complainant has failed to satisfy Policy ¶ 4(a)(i).

**Rights or Legitimate Interests** *Policy ¶4(a)(ii).*

Respondent contends that he has rights and legitimate interests in the **<froogles.com>** domain name because the domain name describes Respondent's business. The Majority Panel concludes that Respondent's business is a bona fide offering of goods or services pursuant to Policy ¶ 4(c)(i). *See Modern Props, Inc. v. Wallis*, FA 152458 (Nat. Arb. Forum June 2, 2003) (finding that Respondent's operation of a bona fide business of online prop rentals for over two years was evidence that Respondent had rights or legitimate interests in the disputed domain name); *see also Scholastic Inc. v. Master Games Int'l, Inc.*, D2001-1208 (WIPO Jan. 3, 2002) (finding that Respondent's use of the disputed domain name for a website regarding chess tournaments, particularly because the domain name appropriately described both the target users of Respondent's services and the nature of Respondent's services, was a bona fide use of the domain name); *see also Bankinter S.A. v. BI Fin. Inc.*, D2000-0460 (WIPO Sept. 5, 2000) (finding that "[b]y September 1999, when first approached by the Complainant, the Respondent or its predecessors had used the <bankinternet.com> website for almost 4 years, thus demonstrating 'a *bona fide* offering of goods and services'").

Furthermore, Complainant waited almost four years after Respondent registered the **<froogles.com>** domain name in December 2000 to challenge the domain name. *See Bosco Prod., Inc. v. Bosco email Serv.*, FA 94828 (Nat. Arb. Forum June 29, 2000) ("Without determining if the passage of considerable time would alone bar Complainant from relief in this proceeding, the Panel notes that Complainant does not explain why it has waited nearly four years to try and resolve the [domain name dispute.]"). The Complaint herein was filed after Mr. Wolfe filed a Notice of Opposition to Google's pending application to register the mark FROOGLE in the United States Patent and Trademark Office.

Complainant has failed to satisfy Policy ¶ 4(a)(ii).

**Registration and Use in Bad Faith**  *Policy ¶4(a)(iii).*

Complainant's delay in bringing a claim against Respondent infers that Respondent does not have the requisite bad faith pursuant to Policy ¶ 4(a)(iii).  *See New Piper Aircraft, Inc. v. Piper.com*, FA 94367 (Nat. Arb. Forum May 2, 2000) (stating that Complainant's failure to initiate a suit in over two years indicated that Complainant did not believe that Respondent intended to attract customers through confusion); *see also Reid v. Chao*, FA 154587 (Nat. Arb. Forum May 29, 2003) (finding that Respondent could not have registered the disputed domain name in bad faith where its registration came months before Complainant filed its trademark application and no evidence of common-law rights in the mark were submitted to the Panel).

Furthermore, Respondent did not register or use the domain name in bad faith since Respondent has rights or legitimate interests in the domain name.  *See Mule Lighting, Inc. v. CPA*, FA 95558 (Nat. Arb. Forum Oct. 17, 2000) (finding no bad faith where Respondent has an active website that has been in use for two years and where there was no intent to cause confusion with Complainant's website and business); *see also DJF Assocs., Inc. v. AIB Communications*, FA 95612 (Nat. Arb. Forum Nov. 1, 2000) (finding Respondent has shown that it has a legitimate interest in the domain name because Respondent selected the name in good faith for its website, and was offering services under the domain name prior to the initiation of the dispute).

Complainant has failed to satisfy Policy ¶ 4(a)(iii).

**Reverse Domain Name Hijacking**

Complainant has not engaged in Reverse Domain Name Hijacking by attempting to protect its GOOGLE trademark.

**DECISION**

Having failed to establish all three elements required under the ICANN Policy, the Panel concludes that relief shall be **DENIED**.

Accordingly, it is Ordered that the **<froogles.com>** domain name **NOT** be transferred from Respondent to Complainant and that Complainant's Complaint be **DISMISSED**.

_____
Honorable Charles K. McCotter
Arbitrator

Hon. Charles K. McCotter, Jr. (Ret.), Panelist

_[signature]_

Honorable John J. Upchurch
Arbitrator

Hon. John J. Upchurch, (Ret.)

Dated: July 18, 2004

## DISSENTING OPINION OF THE HONORABLE RICHARD B. WICKERSHAM, (RET.)

**Identical and/or Confusingly Similar**  *Policy ¶ 4(a)(i).*

Complainant asserts that it has established rights in the GOOGLE mark through registration of the mark with the United States Patent and Trademark Office (Reg. No. 2,806,075 issued January 20, 2004, filed September 16, 1999) and through several pending trademark applications. Complainant also holds various trademark registrations in countries that range from Argentina to Thailand. *See Men's Wearhouse, Inc. v. Wick*, FA 117861 (Nat. Arb. Forum Sept. 16, 2002) ("Under U.S. trademark law, registered marks hold a presumption that they are inherently distinctive and have acquired secondary meaning."); *see also FDNY Fire Safety Educ. Fund, Inc. v. Miller*, FA 145235 (Nat. Arb. Forum Mar. 26, 2003) (finding that Complainant's rights in the FDNY mark relate back to the date that its successful trademark registration was filed with the U.S. Patent and Trademark Office); *see also SeekAmerica Networks Inc. v. Masood*, D2000-0131 (WIPO Apr. 13, 2000) (finding that the Rules do not require that Complainant's trademark or service mark be registered by a government authority or agency for such rights to exist. Rights in the mark can be established by pending trademark applications.). I agree.

Complainant contends that the **<froogles.com>** domain name is confusingly similar to Complainant's GOOGLE mark. The only difference is the mere addition of the letters "f" and "r" and the plural "s," which do not significantly distinguish the domain name from the mark. *See VeriSign Inc. v. VeneSign C.A.*, D2000-0303 (WIPO June 28, 2000) (finding that the pronunciation and spelling between the domain name <venesign.com> and Complainant's mark, VERISIGN, are so close that confusion can arise in the mind of the consumer); *see also Am. Online, Inc. v. Peppler*, FA 103437 (Nat. Arb. Forum Feb. 22, 2002) (finding the word "quest" and "crest" to be similar in sound and, thus, that Respondent's <mapcrest.com> domain name and Complainant's MAP QUEST mark are confusingly similar); *see also Blue Cross & Blue Shield Ass'n v. InterActive Communications, Inc.*, D2000-0788 (WIPO Aug. 28, 2000) (finding that a domain name which merely adds the letter 's' to Complainant's mark is sufficiently similar to the mark to cause a likelihood of confusion among the users of Complainant's services and those who were to view a web site provided by Respondent accessed through the contested domain name). I agree.

**Rights or Legitimate Interests**  *Policy ¶4(a)(ii).*

Complainant alleges that Respondent is appropriating Complainant's mark in the disputed domain name in order to market goods and services similar to Complainant's goods and services. I find that this is not a bona fide offering of goods or services pursuant to Policy ¶ 4(c)(i) or a legitimate noncommercial or fair use pursuant to Policy ¶ 4(c)(iii). *See Computerized Sec. Sys., Inc. v. Hu*, FA 157321 (Nat. Arb. Forum June 23, 2003) (holding that Respondent's appropriation of Complainant's mark to market products that compete with Complainant's goods does not constitute a bona fide offering of goods and services); *see also Avery Dennison Corp. v. Steele*, FA 133626 (Nat. Arb. Forum Jan 10, 2003) (finding that Respondent had no rights or legitimate interests in the disputed domain name where it used Complainant's mark, without authorization, to attract Internet users to its business, which competed with Complainant); *see also Chip Merch., Inc. v. Blue Star Elec.*, D2000-0474 (WIPO Aug. 21, 2000) (finding that the disputed domain names were confusingly similar to Complainant's mark and that Respondent's use of the domain names to sell competing goods was illegitimate and not a bona fide offering of goods). I agree.

Given the WHOIS registration information, the Panel may infer that Respondent is not commonly known by the domain name pursuant to Policy ¶ 4(c)(ii). *See Tercent Inc. v. Yi*, FA 139720 (Nat. Arb. Forum Feb. 10, 2003) (stating "nothing in Respondent's WHOIS information implies that Respondent is 'commonly known by' the disputed domain name" as one factor in determining that Policy ¶ 4(c)(ii) does not apply); *see also RMO, Inc. v. Burbridge*, FA 96949 (Nat. Arb. Forum May 16, 2001) (interpreting Policy ¶ 4(c)(ii) "to require a showing that one has been commonly known by the domain name prior to registration of the domain name to prevail"); *see also Charles Jourdan Holding AG v. AAIM*, D2000-0403 (WIPO June 27, 2000) (finding no rights or legitimate interests where (1) Respondent is not a licensee of Complainant; (2) Complainant's prior rights in the domain name precede Respondent's registration; (3) Respondent is not commonly known by the domain name in question).

**Registration and Use in Bad Faith**  *Policy ¶4(a)(iii).*

Complainant asserts that Respondent had actual or constructive knowledge of Complainant's GOOGLE mark and therefore Respondent registered and used the domain name in bad faith pursuant to Policy ¶ 4(a)(iii). Registration of a domain name confusingly similar to a mark, despite knowledge of the mark holder's rights, is evidence of bad faith registration and use. *See Digi Int'l v. DDI Sys.*, FA 124506 (Nat. Arb. Forum Oct. 24, 2002) ("[T]here is a legal presumption of bad faith, when Respondent reasonably should have been aware of Complainant's trademarks, actually or constructively."); *see also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) ("Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse."); *see also Samsonite Corp. v. Colony Holding*, FA 94313 (Nat. Arb. Forum Apr. 17, 2000) (finding that evidence of bad faith includes actual or constructive knowledge of a commonly known mark at the time of registration). I agree.

Moreover, Complainant argues that Respondent's **<froogles.com>** domain name causes Internet users to mistakenly believe that the disputed domain name is affiliated with Complainant. Complainant asserts that the initial user confusion that the domain name causes is evidence that Respondent registered and used the domain name in bad faith pursuant to Policy ¶ 4(b)(iv). I agree. *See Sony Kabushiki Kaisha v. Inja, Kil*, D2000-1409 (WIPO Dec. 9, 2000) (finding bad faith registration and use where it is "inconceivable that the respondent could make any active use of the disputed domain names without creating a false impression of association with the Complainant"); *see also Pavillion Agency, Inc. v. Greenhouse Agency Ltd.*, D2000-1221 (WIPO Dec. 4, 2000) (finding that the "domain names are so obviously connected with the Complainants that the use or registration by anyone other than Complainants suggests 'opportunistic bad faith'"); *see also Reuters Ltd. v. Teletrust IPR Ltd.*, D2000-0471 (WIPO Sept. 8, 2000) (finding that Respondent demonstrated bad faith where Respondent was aware of Complainant's famous mark when registering the domain name as well as aware of the deception and confusion that would inevitably follow if he used the domain names). I concur.

Furthermore, Complainant avers that Respondent registered and used the domain name in bad faith pursuant to Policy ¶ 4(b)(iii) because Respondent is using the domain name, which is confusingly similar to Complainant's mark, to compete with Complainant's business. *See Surface Protection Indus., Inc. v. Webposters*, D2000-1613 (WIPO Feb. 5, 2001) (finding that, given the competitive relationship between Complainant and Respondent, Respondent likely registered the contested domain name with the intent to disrupt Complainant's business and create user confusion); *see also EBAY, Inc. v. MEOdesigns*, D2000-1368 (Dec. 15, 2000) (finding that Respondent registered and used the domain name <eebay.com> in bad faith where Respondent has used the domain name to promote competing auction sites). Clearly our case!

**Reverse Domain Name Hijacking**

I concur with the Majority Panel in finding that Complainant has not engaged in Reverse Domain Name Hijacking.

## DISSENTING OPINION WITH FINDINGS

Having established all three elements required under the ICANN Policy, in my view, I find that relief should be **GRANTED** to Complainant.

The Opinion of Dissent is that the **<froogles.com>** domain name should be **TRANSFERRED** from Respondent to Complainant.

---

Dissent From
Hon. Richard B. Wickersham, (Ret.), Panelist

_____

Dated: July 18, 2004

# Exhibit 3

# LEGAL SERVICES AGREEMENT

This LEGAL SERVICES AGREEMENT ("Agreement") is made as of September 1, 2004, by and between Richard Wolfe ("Client"), an individual residing at 17 Castle Lane, Holtsville, New York 11742and Cameron & Hornbostel LLP ("Attorney"), a New York registered limited liability partnership having an office at 818 Connecticut Avenue, NW, Suite 700, Washington, D.C.

## RECITALS

WHEREAS, Client owns the domain name Froogles.com and operates a website at that address under the mark FROOGLES, and Client is seeking to register the mark FROOGLES in the United States Patent and Trademark Office ("USPTO") (Client's domain name, mark, pending application in the USPTO (Ser. No. 7829093) and any resulting registration, website and all assets and rights related to any of the forgoing are hereinafter referred to as "Client's Assets");

WHEREAS, Google Inc. ("Google"), a publicly-traded company, owns the domain name Froogle.com and operates a website at that address under the mark FROOGLE, and Google is seeking to register the mark FROOGLE in the USPTO (Ser. No. 78187946);

WHEREAS, Client wishes to prevent Google from obtaining a USPTO registration for the mark FROOGLE, and at Client's request Attorney has commenced an opposition proceeding on behalf of Client against the pending FROOGLE application in the USPTO before the Trademark Trial and Appeal Board (Opp. No. 91159991) ("Opposition Proceeding");

WHEREAS, Google has filed its answer in the Opposition Proceeding; the parties are in the discovery period in the Opposition Proceeding at the present time; Google filed a Complaint under the Uniform Domain Name Dispute Resolution Policy in May 2004 in which it sought to have Client's domain name transferred to it; Attorney successfully defended that action on behalf of Client, obtaining a dismissal of Google's complaint and thus allowing Client to keep its domain name Froogles.com; Attorney has to date provided additional legal services and incurred expenses as set forth in its billing statements;

WHEREAS, Client wishes for Attorney to continue to prosecute the pending application to register the mark FROOGLES in the USPTO and to continue through the Opposition Proceeding to seek to prevent Google from registering the mark FROOGLE in the USPTO (those matters are referred to herein together as the "USPTO Matters"); but is unable to compensate Attorney for Attorney's services at Attorney's regular hourly rates; and

WHEREAS, Client has previously requested that Attorney represent him on a contingent fee basis but Attorney has declined; Client has sought out other attorneys to represent him on a contingent fee basis but those attorneys have declined to take the matter on that basis as well; Attorney is prepared now to agree to handle the USPTO Matters on a limited contingent fee basis subject to the terms and conditions set forth below.

NOW THEREFORE, in consideration of the mutual covenants herein contained, Client and Attorney agree as follows:

1.     Scope of Legal Services.  The parties agree that the legal services to be provided by Attorney to Client pursuant to this Agreement shall be limited to representation of Client in the USPTO Matters and possible related settlement negotiations. Legal services that are not to be provided by Attorney under this Agreement specifically include, but are not limited to, representation of Client in connection with any claim filed or proceeding commenced by any person or party (including but not limited to Client or Google) in a court of law or before any panel appointed under the Uniform Domain Name Dispute Resolution Policy or any other arbitrator or arbitration panel.  Attorney's provision of legal services pursuant to this Agreement is referred to herein as the "Representation".

2.     Responsibilities of Attorney and Client. Attorney shall perform the legal services called for under this Agreement, keep Client informed of progress and developments regarding the Representation, and respond promptly to Client's inquiries and communications. Client will be truthful and cooperative with Attorney and keep Attorney informed of all developments of which Client is aware regarding the USPTO Matters.  Any communications that Client may wish to have with Google or other persons (including the press and other media) concerning the subject of this Representation shall be made by Attorney.  Any attempts by Google or such

2

persons to communicate with Client shall be referred by Client to Attorney for response.

3.    Attorney Fees.

    (a)  The amount Attorney shall receive from Client for attorney's fees for the legal services provided under this Agreement will be equal to:

        (i) (A) thirty five percent (35%) of any consideration received by Client from Google or any third party in any settlement of the Opposition Proceeding or as payment for Client's Assets, or one hundred and fifty thousand dollars ($150,000), whichever is greater, or (B) thirty five percent (35%) of the aggregate total value of Client's Assets ("Value") in the event that Google or any third party either purchases an interest of less than 100% in Client's Assets or invests in any of Client's Assets, or one hundred and fifty thousand dollars ($150,000), whichever is greater; or (C) a thirty five percent (35%) interest in Client's Assets in the event that Client receives no consideration or investment for any or all of such assets; plus

        (ii) any amounts billed and unpaid for legal services provided by Attorney to Client prior to or during the Representation, up to an amount equal to five percent (5%) of the value of any consideration received by Client in accordance with subsection (a)(i) above, provided that, if Google or any third party agrees to pay all or any portion of Attorney's legal fees separately as part of a settlement, sale or investment contemplated under subsection (a)(i) above, then Client shall not be responsible for paying Attorney any amount pursuant to this subsection (ii) to the extent that the amount paid by the third party at least equals or exceeds an amount equal to five percent (5%) of any consideration received by Client pursuant to subsection (a)(i)(A) above or Value as calculated pursuant to subsection (a)(i)(B) above.

        (iii) For purposes of this Section 3, the term "Value" shall mean the quotient resulting where the dividend is the amount paid by Google or a third party for a less than a 100% interest in Client's Assets and the divisor is the percentage of such interest acquired by Google or such third party.

    (b)  If payment of all or any part of any amount to be received by Client pursuant to a settlement, sale or investment in accordance with subsection (a) above is to be deferred (such as in the case of an annuity, a

structured settlement, or periodic payments), the consideration or Value for purposes of calculating the Attorney's fees, will be the initial lump-sum payment plus the present value, as of the time of the settlement, sale or investment, of the payments to be received thereafter. The Attorney's fees will be paid out of the initial lump-sum payment. If the initial lump-sum payment is insufficient to pay the Attorney's fees in full, the balance will be paid from the immediately following payment or payments of the recovery before any distribution to Client.

(c) Client understands and agrees that the Attorney's fees as fixed in this Agreement are not set by law but rather have been negotiated freely between Client and Attorney. CLIENT AND ATTORNEY AGREE THAT IN THE EVENT THAT THE USPTO TRADEMARK TRIAL AND APPEAL BOARD REJECTS CLIENT'S PETITION TO PREVENT GOOGLE FROM OBTAINING A REGISTRATION FOR THE MARK FROOGLE, THEN ATTORNEY WILL RECEIVE NO ATTORNEY'S FEES WITH RESPECT TO THE REPRESENTATION.

4.    <u>Reimbursable Expenses</u>.  Client will reimburse Attorney for all reasonable expenses incurred by Attorney in connection with the Representation, including but not limited to, travel, filing fees, transcript costs, telephone, fax, photocopy and courier.  No out-of-the-ordinary expenses will be incurred by Attorney without Client's prior consent. Attorney will bill Client for such expenses periodically or on a monthly basis, and such expenses shall be due and payable by Client within thirty (30) days of receipt of such bill.

5.    <u>Attorney Right to Renegotiate Agreement</u>:

(a) Attorney, at its sole discretion, shall have the right to renegotiate this Agreement:

(i) in the event that Client desires to expand the scope of the Representation to have Attorney provide legal services not covered by this Agreement (including, but not limited to, representation of Client in a lawsuit, other court proceeding, or domain name dispute); and

(ii) at the end of each successive three (3) month period following the date of this Agreement.

4

(b) If Attorney indicates that it desires to renegotiate this Agreement pursuant to subsection (a) above, and Attorney and Client are unable to agree upon new terms and amend this Agreement accordingly, then this Agreement shall nevertheless remain in effect except that Attorney shall have the right in its sole discretion to terminate the Representation and withdraw from the USPTO Matters and any other proceedings or cases (in all instances preserving Attorney's rights to fees as set forth in Section 8 below).

6.    Purchase and Settlement Offers.  Attorney shall not agree to any purchase offer or "settlement" offer without the approval of Client, who shall have the absolute right to accept or reject any such offer. Attorney shall notify Client promptly of the terms of any offer received by Attorney.

7.    Attorney's Lien.  Attorney shall have a lien for Attorney's fees and costs advanced on all of Client's Assets and on all proceeds of any settlement, sale or investment as referred to herein.

8.    Discharge and Withdrawal.

(a)  Client may discharge Attorney at any time by written notice effective when received by Attorney. Unless specifically agreed by Attorney and Client, Attorney will provide no further services and advance no further costs on Client's behalf after receipt of the notice. If Attorney is Client's attorney of record in any proceeding, Client will execute and return a substitution-of-attorney form immediately upon its receipt from Attorney. Notwithstanding the discharge, Client will remain obligated to pay Attorney attorney's fees as they would be calculated pursuant to Section 3(a) had Attorney not been discharged or in an amount equal to any amounts billed and unpaid for legal services provided by Attorney to Client prior to or during the Representation, whichever is greater, plus any unreimbursed expenses incurred by Attorney on Client's behalf prior to or during the Representation.

(b)  In the event Attorney terminates the Representation and withdraws from any cases or proceedings pursuant to subsection 5(b) above, Client will remain obligated to pay Attorney, out of any amounts received in any settlement, sale or investment as referred to herein, an amount equal to any amounts billed and unpaid for legal services provided by Attorney to Client prior to or during the Representation or an amount equal to thirty five

5

percent (35%) of any settlement, sale or investment as referred to herein whichever is greater, plus any unreimbursed expenses incurred by Attorney on Client's behalf prior to the withdrawal.

(c)  This Section 8 shall remain in effect for a period of three years following any termination of this Agreement by Attorney or Client.

9.    Disclaimer of Guaranty.  Although Attorney may advise Client as to possible results regarding the subject matter of this Agreement. Attorney cannot guarantee any particular result. Client acknowledges that Attorney has made no promises about the outcome and that any advice or opinion offered by Attorney in the future will not constitute a guaranty of any outcome.

10.    Entire Agreement. This Agreement contains the entire agreement of the parties with respect to the subject matter hereof. No other agreement, statement, or promise, written or oral, made on or before the effective date of this Agreement will be binding on the parties.

11.    Severability in Event of Partial Invalidity. If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

12.    Modification by Subsequent Agreement. This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both.

13.    Applicable Law; Disputes.

(a)  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE PRINCIPLES THEREOF RELATING TO CONFLICTS OF LAWS.

(b)  The prevailing party in any action or proceeding to enforce any provision of this Agreement will be awarded reasonable attorney's fees and costs incurred in the action or proceeding or in efforts to negotiate the matter.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

CLIENT                                    ATTORNEY

_____                   _____
Richard Wolfe (d/b/a Froogles.com)        Cameron & Hornbostel LLP
                                          By: Stephen L. Humphrey, Partner

# Exhibit 4

CAMERON & HORNBOSTEL LLP
818 CONNECTICUT AVENUE, N.W.
WASHINGTON, D.C. 20006-2722

(202) 293-4690
FAX: (202) 293-1877
www.cameron-hornbostel.com
lawyers@cameron-hornbostel.com

PETER A. HORNBOSTEL
DUNCAN H. CAMERON
WILLIAM KITCHELL INCE
FREDERICK SIMPICH
ALEXANDER W. SIERCK
DENNIS JAMES, JR.
MICHELE SHERMAN DAVENPORT
STEPHEN L. HUMPHREY
THOMAS SILBIGER*
THOMAS E. SKILTON
J.A. ANTUNES MACIEL**
YONG LEE*
JAYNI EDELSTEIN ALEGRIA*

*NOT ADMITTED IN DC
**ADMITTED ONLY IN BRAZIL

NEW YORK OFFICE:
866 UNITED NATIONS PLAZA
NEW YORK, N.Y. 10017
(646) 840-6666
FAX: (646) 735-3759
lawyers@cameron-hornbostel.com

OF COUNSEL:
BERTRAND DELANNEY*
KEVIN O'CONNELL

CORRESPONDENTS
LUIS ALBERTO ANINAT
SANTIAGO, CHILE
LUIZ CLAUDIO DUARTE
RIO DE JANEIRO, BRAZIL
APISITH JOHN SUTHAM
BANGKOK, THAILAND

May 25, 2005

Stephen L. Humphrey
Direct dial: 202-293-3529
shumphrey@cameron-hornbostel.com

### COURTESY COPY

VIA FAX: 1-631-712-5606
The Honorable Thomas C. Platt, Senior Judge,
United States District Court for the Eastern District of New York
Long Island Courthouse
1044 Federal Plaza
P.O. Box 9014
Central Slip, NY 11722-9014

Re:   **Google, Inc. v. Richard Wolfe d/b/a/ FROOGLES.com**
      **Case No. CV 05 1779**

Dear Judge Platt:

Mr. Capece gave me permission to fax this letter to chambers. This letter is being submitted under Rule 1(E) of the Individual Practices of Judge Thomas C. Platt.

The purpose of this letter is to request an extension of time for defendant Richard Wolfe, d/b/a FROOGLES.com to answer or otherwise respond to the Complaint filed in this action by plaintiff Google, Inc. The answer was originally due May 5, 2005. Defendant has made one previous request for a 20-day extension, which was granted with the consent of counsel for plaintiff, Google, Inc.

Counsel for plaintiff has refused to consent to this request. In a telephone conversation yesterday, plaintiff's counsel stated that she would contact Google, Inc. to inquire whether the client would permit her to give consent to the extension request, but only if defendant Richard Wolfe would agree to one condition. The condition pertained to a proceeding pending before the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office in which plaintiff and defendant herein are the only parties. In that proceeding Mr. Wolfe is opposing Google's application to register the mark FROOGLE for a new shopping service. On the day after filing the instant suit, Google moved the TTAB to suspend the opposition proceeding in deference to this civil action. The condition stated by counsel in our telephone conversation

The Honorable Thomas C. Platt, Senior Judge
May 25, 2005
Page 2

yesterday was that Mr. Wolfe withdraw his opposition to Google's motion to suspend the TTAB proceeding. That was the only condition stated, and it was rejected by the undersigned on behalf of Mr. Wolfe.

If defendant Wolfe's request is granted, his time to answer or respond to the Complaint will be extended to June 24, 2005. Magistrate Judge E. Thomas Boyle has ordered an initial scheduling conference to be held in this case on August 5, 2005. That date will not be affected by the requested extension.

The circumstances leading to this request may be summarized briefly.

The undersigned is a partner in the law firm Cameron & Hornbostel LLP ("C&H"). C&H represents defendant Wolfe, d/b/a/ FROOGLES.com in the opposition proceeding now pending before the TTAB and referred to above. C&H instituted that proceeding on behalf of Mr. Wolfe in March 2004. C&H has conducted discovery in that proceeding on behalf of Mr. Wolfe and in December 2004 filed a motion for summary judgment, asking the TTAB to sustain Mr. Wolfe's opposition and refuse Google's application to register the mark FROOGLE. That motion is pending. Shortly after the opposition proceeding was instituted, in May 2004, Google filed a complaint under the Uniform Domain Name Dispute Resolution Policy ("UDRP") in an attempt to have Mr. Wolfe's domain name FROOGLES.com taken from him and transferred to Google. C&H represented Mr. Wolfe in that proceeding as well. The panel appointed to decide that case dismissed Google's complaint.

Mr. Wolfe has asked C&H to represent him in the instant proceeding. Mr. Wolfe and C&H are exploring financial and other considerations in seeking to determine how best to proceed, but have not yet reached an agreement whereby C&H could commit to representing Mr. Wolfe in this federal litigation. At the same time, Mr. Wolfe wishes to avoid having a judgment entered against him by default on Google's sixty-eight page, six-count Complaint.

After Google's counsel refused to give her consent in our telephone conversation yesterday, C&H filed a motion in this Court electronically seeking a 30-day extension. Late this afternoon Google's counsel in a letter demanded that the motion be withdrawn as improper in that it violated Rules 1(E) and 2(C) (failure to schedule oral argument) of this Court's Individual Practices.

Following receipt of that letter, and uncertain what to do to protect Mr. Wolfe in this awkward situation, the undersigned placed a call to the Court and, failing to reach the Court's Deputy Clerk, called Chambers and spoke to Mr. Capece. Mr. Capece authorized me to fax a letter to Your Honor explaining the situation and the uncertainty at this time whether the undersigned and C&H will be able to represent defendant Wolfe in this case.

The Honorable Thomas C. Platt, Senior Judge
May 25, 2005
Page 3


   Thank you, Your Honor, for your attention to this request.

   A copy of this letter is simultaneously being delivered to counsel for plaintiff, Virginia R. Richard, Esq., by fax, and it is also being filed with the Court electronically through ECF.

       Respectfully submitted,

       Stephen L. Humphrey


Cc:  Virginia R. Richard, Esq. (VIA FAX:
   Winston & Strawn LLC
   200 Park Avenue
   New York, NY 10166

CAMERON & HORNBOSTEL LLP
818 CONNECTICUT AVENUE, N.W.
WASHINGTON, D.C. 20006-2722
———
(202) 293-4690
FAX: (202) 293-1877
www.cameron-hornbostel.com
lawyers@cameron-hornbostel.com

PETER A. HORNBOSTEL
DUNCAN H. CAMERON
WILLIAM KITCHELL INCE
FREDERICK SIMPICH
ALEXANDER W. SIERCK
DENNIS JAMES, JR.
MICHELE SHERMAN DAVENPORT
STEPHEN L. HUMPHREY
THOMAS SILBIGER*
THOMAS E. SKILTON
J.A. ANTUNES MACIEL**
YONG LEE*
JAYNI EDELSTEIN ALEGRIA*

*NOT ADMITTED IN DC
**ADMITTED ONLY IN BRAZIL

NEW YORK OFFICE:
866 UNITED NATIONS PLAZA
NEW YORK, N.Y. 10017
(646) 840-6666
FAX: (646) 735-3759
lawyers@cameron-hornbostel.com
———
OF COUNSEL:
BERTRAND DELANNEY*
KEVIN O'CONNELL

CORRESPONDENTS
LUIS ALBERTO ANINAT
   SANTIAGO, CHILE
LUIZ CLAUDIO DUARTE
   RIO DE JANEIRO, BRAZIL
APISITH JOHN SUTHAM
   BANGKOK, THAILAND

June 23, 2005

Stephen L. Humphrey
**Direct dial: 202-293-3529**
shumphrey@cameron-hornbostel.com

VIA FAX: 1-631-712-5606
The Honorable Thomas C. Platt, Senior Judge,
United States District Court for the Eastern District of New York
Long Island Courthouse
1044 Federal Plaza
P.O. Box 9014
Central Slip, NY 11722-9014

**Re:  Google, Inc. v. Richard Wolfe d/b/a/ FROOGLES.com**
**Case No. CV 05 1779**

Dear Judge Platt:

Mr. Capece gave me permission to fax this letter to chambers.

On May 25, 2005 I requested an extension of time for defendant Richard Wolfe, d/b/a FROOGLES.com to answer or otherwise respond to the Complaint filed in this action by plaintiff Google, Inc. The basis for the request was that Mr. Wolfe had asked this firm, Cameron & Hornbostel LLP ("C&H"), to represent him in the instant civil action. At the time my earlier letter was submitted to the Court last month, C&H and Mr. Wolfe had not yet reached any agreement as to representation in the instant civil action. The Court extended the due date for defendant Wolfe to answer or otherwise respond to the Complaint to June 24, 2005.

The Honorable Thomas C. Platt, Senior Judge
June 23, 2005
Page 2

    The purpose of this letter is to inform the Court that C&H will not be representing defendant Wolfe in this civil action. Mr. Wolfe has advised us, however, that another attorney has agreed to represent him, and will be entering an appearance on defendant's behalf later today or tomorrow.

    A copy of this letter is simultaneously being delivered to counsel for plaintiff, Virginia R. Richard, Esq., by fax, and it is also being filed with the Court electronically through ECF.

        Respectfully submitted,

        Stephen L. Humphrey

Cc:   Virginia R. Richard, Esq. (VIA FAX: 212-294-4700)
      Winston & Strawn LLC
      200 Park Avenue
      New York, NY 10166